**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JIMMY A. SCHLIER, et al.,

    Plaintiffs,

        v.

CAPT. JOHN G. RICE, et al.,

    Defendants.

NO. 3:04-CV-1863

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court are numerous post-trial motions made by both Plaintiffs and Defendants.  These motions include Plaintiffs' "Motion for a New Trial Against Col. Jeffrey Miller" (Doc. 240), Plaintiff Wreckers International's "Motion for a New Trial on Wreckers International's Compensatory Damages" (Doc. 243), and Defendant John G. Rice's "Motion for a Judgment as a Matter of Law or, Alternatively, for a New Trial Pursuant to FED.R.CIV.P. 59(a), or for a Remittitur" (Doc. 248).  For the reasons that follow, Plaintiffs' "Motion for a New Trial Against Col. Jeffrey Miller" (Doc. 240) and Plaintiff Wreckers International's "Motion for a New Trial on Wreckers International's Compensatory Damages" (Doc. 243) will be denied.  Defendants' "Motion for a Judgment as a Matter of Law or, Alternatively, for a New Trial Pursuant to Fed.R.Civ.P. 59(a), or for a Remittitur" (Doc. 248) will be denied with respect to the motions for a judgment as a matter of law and a new trial, and will be granted with respect to the motion for remittitur.

## BACKGROUND

Plaintiff Jimmy A. Schlier is the owner, president and operator of Plaintiff Wreckers International Inc., d/b/a Schlier's Towing & Service Center ("Schlier's Towing").  (Decl. of Jimmy A. Schlier, Doc. 91 ¶ 1.)  In 1976 or 1977, Schlier's business began performing towing

services for the Pennsylvania State Police (PSP) and until September 2002, Plaintiffs were on the State Police's approved towing referral lists, whereby they regularly received requests from motorists and the State Police to tow vehicles that were broken down, involved in accidents, or impounded for criminal investigations; Plaintiffs also regularly performed towing and repair services on State Police vehicles.  (Pls.' Statement of Undisputed Material Facts, Doc. 90 ¶¶ 2, 5, 13 [hereinafter Pls.' Statement]; Defs.' Counterstatement of Undisputed Material Facts, Doc. 107 ¶¶ 2, 5, 13 [hereinafter Defs.' Counterstatement].)

The Defendants, at the origination of this case, were Colonel Jeffrey Miller, Commissioner of the PSP; Major John Rice, Commander of Area V and, in 2002, before his promotion from captain, the commanding officer of Troop N, which includes five (5) stations; Lieutenant David Dougalas, the station commander of the Swiftwater barracks of Troop N; Daniel McGuire, assistant counsel at the State Police Office of Chief Counsel (OCC) beginning April 8, 2002; Lieutenant Colonel Cynthia Transue, Commander of Area V in 2002; Joe Robb, Director of the Bureau of Vehicle Management in the Department of General Services (DGS) in 2002; and Josie Sharp, current Director of Vehicle Management in the DGS.  (Pls.' Statement ¶¶ 8-10; Defs.' Counterstatement ¶¶ 8-10; Pls.' Second Am. & Supplemental Compl, Doc. 67, ¶¶ 6, 11; Defs.' Answer to Second Am. & Supplemental Compl., Doc. 103 ¶¶ 6, 11; Dep. of Daniel McGuire, Doc. 122-7, at 15: 2-10, 143: 3-8.)

In February 2001, the PSP adopted Field Regulation 6-2, which regulated the provision of emergency towing services.  It provided troop commanders with authority to suspend towing operators from the referral lists for a number of reasons, including failure to maintain the regulation's standards; commission of an act involving dishonesty or corruption when it affects the health, welfare, or safety of others; overcharging for services, to be

determined in conjunction with the fee schedule the operator submitted its application; or repeated conduct that tends to demean the public image of the Police. (Defs.' Statement of Undisputed Material Facts, Doc. 122 ¶¶ 3-4 [hereinafter Defs.' Statement]; Pls.' Counterstatement of Facts, Doc. 137 ¶¶ 3-4 [hereinafter Pls.' Counterstatement].)

In late 2001 or early 2002, disputes developed between Plaintiff Schlier and the PSP about billing. (*See* Pls.' Statement ¶ 15; Defs.' Counterstatement ¶ 15.) In January 2002, Mr. Schlier had a series of conversations with Representative Kelly Lewis, discussing trouble he was having getting paid for towing operations. (Dep. of Jimmy Schlier, Oct. 19, 2005, Doc. 140-6, at 61-64.) In response to a price that the Police thought exorbitant and a complaint filed against Schlier's Towing by another company, which led to an investigation into possible deceptive practices by Schlier's Towing, the PSP decided to no longer use Schlier's services exclusively but to seek out the best price each time towing services were needed. (*See* Defs.' Statement ¶¶ 12-18; Pls.' Counterstatement ¶¶ 12-18.) Mr. Schlier called then-Captain Rice to express concern that his services were no longer being used, and Rice informed him of the decision; at this point, Schlier complained of unpaid bills and Rice told Schlier to forward any such bills to Rice for his evaluation. (Defs.' Statement ¶¶ 18-19; Pls.' Counterstatement ¶¶ 18-19.) Schlier then sent more than sixty (60) bills totaling thirty-three thousand, three hundred twenty-five dollars and seventy-five cents ($33,325.75). (Pls.' Statement ¶ 17; Defs.' Counterstatement ¶ 15.)

On April 27, 2002, Plaintiff Schlier sent a formal complaint to the Director of the Division of Internal Affairs, which investigates reports of misconduct, alleging that the Swiftwater barracks had failed to pay bills and had improperly directed towing business to another towing operator owned by a convicted felon. (Pls.' Statement ¶¶ 18-21; Defs.'

3

Counterstatement ¶¶ 18-21.)  This complaint was forwarded to Rice by May 22, 2002.  (Pls.'

Statement ¶ 23; Defs.' Counterstatement ¶ 23.)  Rice later asked his personnel to survey

Plaintiffs' rates, and after a survey, Lieutenant Dougalas reported to Rice that Plaintiffs' rates

were two (2) to four (4) times higher than competitors'.  (Defs.' Statement  ¶¶ 25-27; Pls.'

Counterstatement ¶¶ 25-27.)

On August 27, 2002, Rice informed Plaintiff that his company would be removed from

all Troop N referral lists effective September 6, 2002.   Rice informed Plaintiff that his

decision was based on four factors: (1) Schlier's Towing failed to meet the requirement of

charging reasonable and customary fees; (2) the company demeaned the image of the State

Police by falsely communicating to another business that it had a contract with the Police

and that the Police approved of its billing practices; (3) a complaint filed by that other

company against Schlier's Towing resulted in a criminal investigation into deceptive or

fraudulent business practices; and (4) Schlier's Towing submitted invoices to the Police

totaling thirty-three thousand, three hundred twenty-five dollars and seventy-five cents

($33,325.75) but the State Police do not act as guarantor of the expenses that motorists may

owe to emergency towing operators and the Police will not assume responsibility for the

expenses.  Finally, Rice informed Plaintiff that he could apply for reinstatement after six (6)

months, contingent upon taking "appropriate remedial action so that [your business] will not

conflict with the standards required by the Pennsylvania State Police."  (Pls.' Statement ¶¶

24-25; Defs.' Counterstatement ¶¶ 24-25.)  The criminal investigation of Schlier's Towing

ended September 26, 2002, after the district attorney declined prosecution.  (Pls.' Statement

¶ 53; Defs.' Counterstatement ¶ 53.)

On November 15, 2002, Schlier's Towing filed an action with the Pennsylvania Board

of Claims against the PSP to recover the charges it claimed it was owed, and the Board of Claims entered an opinion sustaining Plaintiffs' claim as stating a cause of action for breach of an implied-in-fact contract or an implied-in-law contract. (Pls.' Statement ¶¶ 54-55; Defs.' Counterstatement ¶¶ 54-55.)   In March 2003, Plaintiffs unsuccessfully applied for reinstatement to the Police referral lists.   (Pls.' Statement ¶¶ 57-60, 62-64; Defs.' Counterstatement ¶¶ 57-60, 62-64.)

In March 2006, Plaintiffs sent a letter to Colonel Miller through counsel complaining that the PSP had removed them from the referral lists in retaliation for exercise of their First Amendment rights to petition the government for redress of grievances, namely, for submitting the invoices.  Plaintiffs argued in the letter that the reasons Rice gave for the suspension were pretextual.  (Pls.' Statement ¶ 67; Defs.' Counterstatement ¶ 67.)  An assistant counsel with the State Police then wrote to Plaintiffs' counsel that his letter was best directed not to Miller but to the Office of Attorney General, which represented the Defendants, as that he would forward it there.   (Pls.' Statement ¶ 68; Defs.' Counterstatement ¶ 68.)

In August of 2006, after Plaintiffs moved for a preliminary injunction ordering Colonel Miller and Major Rice to reinstate them to the towing referral lists, the parties agreed to a rate schedule and Plaintiffs were reinstated to the lists.  (Pls.' Statement ¶¶ 70-75; Defs.' Counterstatement ¶¶ 70-75.)

Plaintiffs filed their Complaint initiating this case on August 20, 2004.  (Doc. 1.) Plaintiffs filed their Amended Complaint (Doc 18), mooting Defendants' initial Motion to Dismiss (Doc. 13).  Defendants then moved to dismiss the Amended Complaint (Doc. 20), and this Court denied that motion in its Memorandum and Order of February 16, 2006.

(Doc. 29). Plaintiffs later filed their Second Amended and Supplemental Complaint on October 25, 2006.  (Doc. 67.) Defendants moved to dismiss Count III of that Complaint (Doc. 76.), and this Court denied their motion in its Memorandum and Order of January 11, 2007. (Doc. 99.)  Defendants filed their Answer to the Second Amended and Supplemental Complaint on January 25, 2007.  (Doc. 103.)   Plaintiffs filed a motion for partial summary judgment (Doc. 89) on January 2, 2007, and Defendants filed a summary judgment motion (Doc. 96) on January 3, 2007.  In a Memorandum and Order dated October 9, 2007, this Court denied Plaintiffs' motion for partial summary judgment against Defendants Rice and Miller, dismissed Defendant Josie Sharp, denied Defendants' motion for summary judgment in favor of Defendants Rice, Miller and Douglas with respect to Plaintiffs' First Amendment claims, granted Defendants' motion for summary judgment in favor of Defendants McGuire, Transue and Robb with respect to Plaintiffs' First Amendment claims, and granted Defendants' motion for summary judgement  with respect to Plaintiffs' Fourteenth Amendment due process claims.  (Doc. 156.)

The remaining First Amendment retaliation claims against Defendants Rice, Miller, and Dougalas proceeded to trial on March 4, 2008.  On March 14, 2008, Defendants moved for a dismissal pursuant to Federal Rule of Civil Procedure 50 which was denied by the Court.   On March 18, 2008, Defendants renewed their Rule 50 motion, and the Court granted it with respect to Defendant Col. Miller, dismissing him from the case.   The trial continued with Rice and Dougalas the only remaining Defendants. On March 20, 2008, after twelve (12) days of trial, the jury returned a verdict in favor of Plaintiffs, awarding Plaintiff Jimmy Schlier two million, two hundred fifty thousand dollars ($2,250,000) in compensatory damages and awarding Plaintiff Wreckers International, Inc. one million ($1,000,000) in

compensatory damages. (Doc. 233.)  This Court entered judgment accordingly. (Docs. 230, 231.)   On March 31, Plaintiffs filed a Motion for a New Trial against Col. Jeffrey Miller pursuant to Federal Rules of Civil Procedure 59(a) and 50(d).  (Doc. 240.)  On April 2, 2008, Plaintiff Wreckers International, Inc. filed a Motion for New Trial on Wreckers' Compensatory Damages Only, pursuant to Federal Rule of Civil Procedure 59(a).  (Doc. 243.)  On April 3, 2008, Defendants Rice and Dougalas filed their Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial Pursuant to Fed.R.Civ.P. 59(a), or For a Remittitur.  (Doc. 248.) Each of these motions have been fully briefed and are now ripe for disposition.

## LEGAL STANDARDS

### I.       Rule 50(d)

Under Rule 50(d), "[a]ny motion for a new trial under Rule 59 by a party against whom judgment as a matter of law is rendered must be filed no later than 10 days after the entry of the judgment." FED. R. CIV. P. 50(d).  The only motion currently before the Court involving a judgment as a matter of law is Plaintiff's Motion for a New Trial Against Col. Jeffrey Miller (Doc. 240), which was timely filed on March 31, 2008.

### II.      Rule 59(a)

Under Rule 59(a), motions for a new trial must be filed within ten (10) days of the date the judgment was entered.  *See* FED. R. CIV. P. 59.  Plaintiffs' Motion for a New Trial Against Col. Jeffrey Miller (Doc. 240), Plaintiff Wreckers International's Motion for a New Trial on Wreckers' Compensatory Damages (Doc. 243), and Defendants' Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial, or for a Remittitur (Doc. 248) were all timely filed.

The decision to grant a new trial is left to the sound discretion of the trial judge.  *See*

7

*Blackiston v. Johnson,* No. 91-5111, 1995 WL 563834, at *1 (E.D. Pa. 1995), *aff'd* 91 F.3d 122 (3d Cir. 1996), *cert. denied* 519 U.S. 953 (1996).  Courts have granted motions for a new trial where:  (1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury.  *See Maylie v. Nat'l R. R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992).  Where the evidence is in conflict, and subject to two (2) or more interpretations, the trial judge should be reluctant to grant a new trial.  *See Klein v. Hollings,* 992 F.2d 1285, 1295 (3d Cir. 1993).

"Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had  without injustice."  *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).  "[A] new trial limited solely to damages is improper where 'the question of damages . . . is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.'" *Pryor v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001) (quoting *Gasoline Products*, 283 U.S. at 500).  "That is 'the grant of a partial new trial is appropriate only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue.'" *Id*. (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 758 (3d Cir. 2000).

## DISCUSSION

### I.      Plaintiffs' Motion for a New Trial Against Col. Jeffery Miller

In their motion, Plaintiffs argue that, on March 18, 2008, the Court erred in granting

Defendant Miller's motion under Federal Rule of Civil Procedure 50(a) because there was a legally sufficient evidentiary basis for the jury to find for Plaintiffs with respect to Defendant Miller.  In support of their argument, the Plaintiffs focus on the mention of counsel in the Court's March 18, 2008 oral order dismissing Defendant Miller from the case.  Specifically, they argue that the jury could have found counsel's response to a March 9, 2006 letter as evidence of acquiescence to the violation of Plaintiff's First Amendment rights and that Attorney Hawn's May 15, 2006 memorandum of understanding compounded these First Amendment violations.  Plaintiffs, however, do not respond to the Court's finding that no evidence was presented at trial suggesting fault or culpable conduct on the part of Col. Miller regarding his actions subsequent to any notice that he had.  (Tr. March 18, 2008, Doc. 269, 93:5-8.)

In their brief in opposition to Plaintiff's motion, Defendants correctly argue that liability under 42 U.S.C. § 1983 requires personal involvement by the defendant in the alleged acts. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*") (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n. 3 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Id.*  Accordingly, for Defendant Miller to properly remain as a defendant in the current action, Plaintiffs needed to show that Miller was either personally involved in the decision to remove Schlier from the PSP towing referral list or that Miller knew of and acquiesced to Schlier's removal from the list.

During the various stages of this litigation prior to the Court's March 18, 2008 order

9

dismissing Defendant Miller, including eleven (11) days of trial, Plaintiffs presented no evidence that Defendant Miller was personally involved in removing Schlier or Wreckers International from the emergency towing list, and the only evidence presented that suggests knowledge or acquiescence by Miller is contained in a letter dated March 9, 2006, three full years after Schlier's removal.  Without any further evidence suggesting that Miller's actions or acquiescence caused a violation of Schlier's First Amendment rights, the Court could not, and still can not, discern any fault or culpability by Miller sufficient to hold him liable under 42 U.S.C. § 1983.  Accordingly, the Court finds that its March 18, 2008 order dismissing Defendant Miller from this case was appropriate, and Plaintiff's Motion for a New Trial Against Col. Miller (Doc. 240) will be denied.

## II.    Plaintiff Wreckers International's Motion for a New Trial on Compensatory Damages

Plaintiff Wreckers International moves for a new trial with respect to the award of damages, arguing that the one million dollar ($1,000,000) damage amount set by the jury was inadequate and based on evidence that the Court erroneously allowed Defendants to present to the jury.  Defendants also seek a new trial with respect to Wreckers International's damages award and argue that the Court's decision to exclude Plaintiffs' tax returns from the evidence presented at trial in March 2008 unfairly prejudiced the Defendants.

Prior to and during trial, Plaintiffs and Defendants extensively argued their positions with respect to what evidence should be provided to the jury to use when determining an appropriate damage amount.  On March 7, 2008, Plaintiff Schlier testified concerning the value of business generated through the Pennsylvania State Police and the amount of profits lost as a result of Plaintiffs' removal from the towing list.  (Tr. March 7, 2008, Doc. 263,

132:6-145:15; 152:25-159:18.) On March 10, 2008, Defendants' counsel began questioning Plaintiff Schlier with reference to Wreckers International's tax returns.  (Tr. March 10, 2008, Doc. 264, 28:5-9.) Plaintiffs' counsel requested a sidebar where they argued that any discussion of company-wide numbers was inappropriate and would confuse the jury because Plaintiff Schlier owned numerous businesses, including Wreckers International, and reported the income from all of these businesses on a single, consolidated tax return.  Thus, Plaintiffs contended that the company-wide figures that Defendants sought to introduce confused the issue of whether or not Wreckers International lost profits as a result of being removed from the towing list.  (Id., 28:10-31:21.)  Defendants, in contrast, argued that the company-wide numbers showed that Plaintiff Schlier was successful in mitigating any damages resulting from this removal.  In response to the arguments presented, the Court determined that Defendants' counsel could question Plaintiff Schlier concerning mitigation of damages, but not with reference to tax returns showing company-wide revenues.

Defendants' counsel resumed questioning and drew Plaintiff Schlier's attention to his consolidated tax return. (Id., 31:25-32:1.)  Following numerous objections, a second sidebar discussion was held.  (Id., 32:2-33:12.)   The Court explained the appropriate line of questioning to the parties' counsel:

> [Y]ou can talk you can talk about his losses or whether he lost money, but the question is whether he lost money -- you're not talking about his overall income, you're talking about what he lost from losing the state police business and whether or not he mitigated his damages. And the fact that he made the same amount of money or more doesn't necessarily mean that he mitigated damages because there's a lot of other factors that go into his income from year to year to year to year. The question you need to do is to focus on what did he do to make up what he lost from the state police.

(Id., 33:18-34:4.)   In response, Defendants' counsel proposed that Plaintiff Schlier be

questioned concerning his costs of goods sold, not his aggregate revenues. (Id., 34:20-35:11.)  In spite of objections from Plaintiffs' counsel, the Court allowed Defendants to ask Plaintiff Schlier about the total costs of goods sold as shown on his consolidated tax returns. (Id., 36:22-37:1.) Defendants' counsel was instructed to avoid questions regarding Plaintiffs' total revenues, and the Court noted that Plaintiffs' counsel could offer competing evidence to explain any figures offered and relied upon by Defendants.  (Id., 36:23-25, 37:6-38:6.) Plaintiffs' counsel asked, and the Court agreed, that jury be informed that the numbers and amounts being presented in the examination of Plaintiff Schlier were company-wide figures inclusive of Plaintiff Schlier's entire business. (Id., 40:3-8.)  On re-direct examination of Plaintiff Schlier, Plaintiffs' counsel asked if the costs of goods sold figures that had been elicited by Defendants' counsel on cross examination were inclusive of other businesses. Plaintiff Schlier responded that the numbers were consolidated numbers that represented goods sold to all customers, not just the Pennsylvania State Police and included gasoline sold at Plaintiff Schlier's service stations.  (Id., 62:12-63:6)

In the motions currently before the Court, the parties essentially reprise the arguments originally made at trial.  Plaintiffs allege that the company-wide cost of goods numbers presented to the jury resulted in a one million, four hundred thousand dollar ($1,400,000) understatement of damages suffered by Plaintiff.  In contrast, the Defendants once again argue that the Court's decision to omit evidence of total, company-wide revenue numbers kept the Defendants from disproving Plaintiff's damages allegations.  Defendants also argue that Plaintiff Schlier should not have been permitted to testify about his lost profits as a lay witness under Federal Rule of Evidence 701.

Accordingly, the Court finds it appropriate to revisit the evidentiary analysis conducted

during trial and first considers the question of whether the company-wide information offered

by Defendants is relevant and admissible under Federal Rules of Evidence 401 and 402.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence." FED. R. EVID. 401. "All relevant evidence is

admissible, except as otherwise provided by the Constitution of the United States, by Act of

Congress, by [the Federal Rules of Evidence], or other rules prescribed by the Supreme

Court . . .. Evidence that is not relevant is not admissible." FED. R. EVID. 402. In the present

case, Defendants sought to introduce company-wide financial statements into evidence in

support of their arguments concerning Plaintiffs' effort to mitigate losses. Mitigation of losses

is consistent with the purposes of 42 U.S.C. § 1983 and can be used as an affirmative

defense in a § 1983 action. *See Carey v. Piphus*, 435 U.S. 247, 254-57 (1978) (concluding

that damages awards under § 1983 should be governed by the principle of compensation);

*Koppers Co., Inc., v. Aetna Casualty and Surety Co.,* 98 F.3d 1440, 1448 (3d Cir. 1996)

("Mitigation is an affirmative defense, so the burden of proving a failure to mitigate is on the

defendant."). Thus, in the present case, financial data showing whether or not Wreckers

International attempted to or was successful in mitigating damages arising from Defendants'

removal of Wreckers International from the towing list would be relevant evidence.

The tax returns detailing company-wide revenues that are offered by Defendants do

not, however, fall within this category of relevant evidence. As the Court noted at trial, the

appropriate question in this case is not whether the Plaintiffs generally lost money, but rather

whether the Plaintiffs lost money due to their removal from the state police towing list.

(Trans. March 10, 2008, 30:1-4.) Company-wide financial information that pools together

13

numerous businesses owned and operated by Plaintiff Schlier does not tend to make Plaintiffs' mitigation of the damages that were caused by Defendants' actions any more or less probable because such company-wide financial information speaks to the different question of whether the Plaintiff generally suffered losses across *all* of his businesses.

Even if the Court were to find otherwise and determine that the company-wide revenue information were relevant under Rule 401, the Court would still find it necessary to exclude this evidence because "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . .." FED. R. EVID. 403. As Defendant's counsel stated at trial "Part of the complication is that [Plaintiff Schlier] does not calculate his revenues . . . per location. He puts them all together. So it's very difficult to explore mitigation when we have no sense of the success or failures of independent business operations. . .." (Tr. March 10, 2008, Doc. 264, 34:13-17.) Evidence that makes the jury's exploration of facts difficult or that provides the jury no sense of facts at issue is precisely the type of evidence that Rule 403 seeks to exclude.

The Court engaged in this same evidentiary analysis at trial when denying Defendants' attempts to use the company-wide revenue figures. In response to this denial, Defendants proposed that, as part of their mitigation argument, they be allowed to show that Wreckers International's cost of goods sold stayed the same for the years that they were not on the towing list. Over objections from Plaintiffs, the Court allowed the proposed line of questioning with limited references to the company-wide tax forms and revenues and noted that the Plaintiffs would have the opportunity to this evidence and questioning in their re-direct examination of Plaintiff Schlier. In their current motion, Plaintiffs argue that the Court's

14

decision to allow this questioning constitutes reversible error because it provided the admission of evidence that the Defendants used as their sole defense to damages and resulted in a verdict that was inadequate by one million, six hundred fifty thousand dollars ($1,650,000).

In support of their argument, Plaintiffs rely on the so-called "lost volume theory" to state that "because Wreckers International had an abundant supply of heavy duty towing services to provide, it could not have mitigated the damages flowing from removal from towing lists by providing such services to others." (Pl.'s. Br. in Supp., Doc. 280, 14.)  The fact that Wreckers International had the capability to provide an extremely large amount of towing services during the time Wreckers was removed from the towing list does not, however, preclude the Defendants from attempting to show that Wreckers International was successful in minimizing the pecuniary loss resulting from being removed from the list.  Nor does Wreckers International's towing capacity prevent Defendants from attempting to refute the damages amounts Plaintiffs represented to the jury.  In this case, the Court allowed the Defendants to present evidence about damages in a fashion unlikely to confuse jurors, and Plaintiffs had the opportunity to respond to this evidence.  Evidence that contradicts, or even damages, a party's case is not inherently prejudicial, and the Court is unconvinced that the evidence at issue here was sufficient to excite the jury to irrational behavior. Accordingly, the Court sees no reason to grant a new trial concerning Wreckers International's compensatory damages award due to Defendants' questioning of Plaintiff Schlier with respect to the cost of goods sold for the time period before and during Wreckers International's removal from the emergency towing list.

The Court also finds no merit in Plaintiff Wreckers International's argument that the

Court should grant a new trial because the trial jury's one million dollar ($1,000,000) damage award was inadequate.   "[T]he remedy of a new trial for insufficient damages is only appropriate where the evidence indicates that the jury awarded damages in an amount 'substantially less than was unquestionably proven by plaintiff's uncontradicted and undisputed evidence.'" *Semper v. Santos*, 845 F.2d 1233, 1236 (3d Cir. 1988) (quoting *Taylor v. Bennett*, 323 F.2d 607, 609 (7th Cir. 1963)).   A "trial judge should not interfere with the time-honored right of the jury, in the exercise of its collective judgment, to make a just determination of . . . damages sustained by a plaintiff . . .."   *Mainelli v. Haberstroh*, 237 F. Supp. 190, 192 (M.D.Pa. 1964) (Nealon, J.).   However, "[I]t is for the trial judge 'to see that right and justice are done in the case before him, setting aside the verdict and granting a new trial if in the exercise of a sound discretion he thinks such action necessary to prevent an unjust result.'" *Id.* at 192 (quoting *Magee v. General Motors Corp.*, 213 F.2d 899 (3d Cir. 1954).   "An unjust result would flow from an award that was so grossly inadequate . . . as 'to shock the conscience of the court' . . .." *Id.* (citing *Zellem v. Herring*, 102 F.Supp. 105 (W.D.Pa. 1952); *accord. Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030, 1038 (3d Cir. 1987) (articulating that new trials should only be granted if a verdict shocks the judicial conscience).   The Court does not find the one million dollar ($1,000,000) compensatory damages awarded to Wreckers International so inadequate to "shock the conscience" of the Court.   The trial jury was free to draw its own conclusions from the evidence provided, including Plaintiffs' extensive testimony detailing the alleged losses resulting from Wreckers International's removal from the state towing list.   Because the jury in this case could have decided to discount Plaintiff Schlier's personal calculations of his own damages, the Court cannot hold that the jury's one million dollar ($1,000,000) award was the result of a mistake

16

or an abuse of the jury's fact finding discretion.

Finally, the Court returns to the question of whether Plaintiff Schlier should have been permitted to give testimony concerning his lost profits as a lay witness.  Federal Rule of Evidence 701 states:

> If [a] witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.  The Advisory Committee's Note accompanying Rule 701 addresses the lay opinion testimony of a business owner or officer:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert.  See, e.g. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business.).  Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.

FED. R. EVID. 701 Advisory Committee's Note (2000 amendments).  Thus, "[l]ay opinion testimony is permitted only where the 'personal knowledge, rational basis, and helpfulness standards of Rule 701 are met,' and the testimony does not concern scientific, technical, or specialized knowledge reserved for expert witnesses." *Salisbury Real Holdings II, LLC v. North Coventry Township*, No. 05-CV-04781, 2006 U.S. Dist. LEXIS 36710, *4 (E.D.Pa. 2006) (quoting *Asplundh Manufacturing Division v. Benton Harbor Engineering*, 57 F.3d 1190, 1198 (3d Cir. 1995)) (citing FED. R. EVID. 701).  Such requirements "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple

17

expedient of proffering an expert in lay witness clothing." FED. R. EVID. 701 Advisory Committee's Note (2000 amendments).

In the present case, Plaintiff Schlier gave extensive testimony about the lost profits of his business, Wreckers International, using various invoices and billing statements of which he had personal knowledge.  Furthermore, many of the calculations done by Plaintiff Schlier were based on the relatively simple lost profits formula of lost revenue, less avoided costs, that was established in *Kutner Buick v. American Motors Corp.*, 868 F.2d 614, 618 (3d Cir. 1989).  None of the testimony provided by Plaintiff Schlier was sufficiently "scientific, technical, or . . .specialized" to require that the testimony be offered by a qualified expert. FED. R. EVID. 702.  Rather, the calculations of lost profits offered by Plaintiff Schlier involved rudimentary multiplication, addition and subtraction from figures provided on Wreckers Internationals' invoices, and Plaintiff Schlier was able to perform many of these calculations using a pen and paper while on the witness stand.  Furthermore, Plaintiff Schlier testified in great detail about the methodology employed to arrive at the numbers offered, including what invoices were used in the calculations and how those invoices were selected.  Accordingly, the Court finds that Plaintiff Schlier's testimony about Wreckers International's lost profits was based on Schlier's personal knowledge of Wreckers International's billing practices and that Schlier's testimony was both sufficiently documented, non-technical and non-scientific, and based upon sufficient documentation.  Thus, the Court finds that Plaintiff Schlier's testimony was appropriately offered within the parameters set by Federal Rule of Evidence 701, and Defendants' motion for a new trial cannot be granted upon these grounds.

For these reasons, both Plaintiff's and Defendants' motions for a new trial with respect to the compensatory damages awarded to Wreckers International will be denied.

### III.     Defendants' Motion for Judgment as a Matter of Law

In their current motion, the Defendants argue that judgment as a matter of law should be entered in favor of Defendant Dougalas on the claims brought pursuant to 42 U.S.C. § 1983.  According to Defendants, this judgment is warranted because there is insufficient evidence showing that Defendant Dougalas was personally involved in the decision to not reinstate Plaintiffs to the towing list, and because there is insufficient evidence to show that Defendant Dougalas retaliated against Plaintiffs.  This current motion is brought pursuant to Federal Rule of Civil Procedure 50(b) and renews a Rule 50 motion previously brought by Defendants at trial.[1]  (See Trans. March 14, 2008, Doc. 267, 147:9-152:2.)  The original Rule 50 motion brought by Defendant Dougalas at trial was denied because the Court determined that there was evidence in the record that would allow the jury to conclude that Defendant Dougalas was motivated to not reinstate Plaintiffs to the towing list due to the Plaintiffs' First Amendment activity.  (Id., 152:14-23.)

A motion for judgment as a matter of law should be granted if, "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  *Ambrose v. Township of Robinson*, 303 F.3d 488, 492 (3d Cir. 2002) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).  "In order to prevail, the moving party must show that the jury's findings, presumed or expressed, are not supported by substantive evidence, or if they [are], that the legal conclusions implied [by] the

---

[1]     Defendants renewed this Rule 50 motion on March 18, 2008, but this renewal occurred in a discussion specifically regarding Defendant Miller.  While Defendant Dougalas was included in this renewed motion, the supporting and opposing arguments focused on the evidence as it pertained to Defendant Miller, not Defendant Dougalas.  (Trans. March 18, 2008, Doc. 269, 80:6-81:14.)

jury's verdict cannot in law be supported by the findings." *Moore v. Susquehanna Area Regional Airport Authority*, No. 1:02-CV-0535, 2005 U.S. Dist. LEXIS 45023, *7 (M.D.Pa. Sept. 30, 2005) (Kane, C.J.) (citing *Valentti v. Allstate Ins. Co.*, 243 F. Supp. 2d 221, 223 (M.D.Pa. 2003)).

> In considering whether the evidence at trial was sufficient to sustain the jury's verdict, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Although judgment as a matter of law should not be granted liberally, a mere scintilla of evidence is insufficient to sustain a verdict of liability. The Court is not to ask whether there is literally no evidence supporting the verdict, but instead whether there is evidence upon which the jury could properly find a verdict for the prevailing party. Accordingly, if the evidence of record is insufficient to support the jury's verdict, then motion for judgment as a matter of law should be granted.

*Id.* at *8 (citations omitted).

In the current case, Plaintiffs brought claims under 42. U.S.C. § 1983 saying that Defendants retaliated against Plaintiffs after Plaintiffs exercised their First Amendment rights. In order to succeed on a retaliation claim, "a plaintiff must [first] show that his conduct was constitutionally protected.  Second, he must show that his protected activity was a substantial or motivating factor in the alleged retaliatory action.  Finally, the defendant may defeat the plaintiff's case by showing it would have taken the same action even in the absence of the protected conduct."  *Ambrose*, 303 F.3d at 493 (citations omitted). Furthermore, "[a]n individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Throughout litigation, the Defendants have not disputed that the actions Plaintiffs brought against the State Police constituted protected activity for the purposes of § 1983. Defendants do, however, dispute whether Plaintiffs' initiation of a lawsuit was a motivating factor in Dougalas' actions involving Plaintiffs' reinstatement to the towing list in March 2003. At the conclusion of a twelve (12) day trial, the jury found that Defendant Dougalas actively participated in the decision to not reinstate Plaintiffs to the towing referral lists, even though Dougalas did not participate in the initial decision to remove Plaintiffs from these lists. According to Defendants, Plaintiffs failed to present the jury with sufficient evidence showing that Defendant Dougalas was a decision maker capable of reinstating Plaintiffs to the towing lists or that he took any retaliatory action as a result of the lawsuit.

At trial on March 13, 2008, the jury was presented with the testimony of Corporal Vincent P. Rauss, a patrol supervisor under the command of Defendant Dougalas at the Pennsylvania State Police barracks in Swiftwater.  Under examination by Plaintiffs' counsel, Corporal Rauss testified that, on multiple occasions, he had heard Defendant Dougalas refer to Plaintiff Schlier "as the thief of Tannersville."  (Tr. March 13, 2008, Doc. 266, 49:14-50:3.) Corporal Rauss further testified that he witnessed Defendant Dougalas state sometime in 2005 that Plaintiffs would no longer be allowed on the Pennsylvania State Police towing lists "because of a lawsuit that was filed."  (Id., 50:10-14; 54:1-17.)  Additionally, on March 17, 2008, the jury heard testimony from Captain James W. Murtin, the commanding officer and captain of Pennsylvania State Police Troop N.  In this testimony, Captain Murtin stated that patrol section commanders, in concurrence with troop commanders had the power to issue reinstatements and suspensions to and from the emergency towing lists.  (Tr. March 17, 2008, Doc. 268, 123:3-18.)  Captain Murtin further testified that Defendant Dougalas held

21

the authority to reinstate Plaintiffs to the emergency towing lists when Defendant Dougalas briefly served as the commanding officer of Troop N in early 2005.  (Id., 130:4-131:2.)

After reviewing this testimony, the Court finds that the evidence presented to the jury during trial is the type of evidence upon which the jury could properly find a verdict in favor of the Plaintiffs.  Since the evidence of record is sufficient to support the jury's verdict, Defendants' motion judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 will be denied.

IV.     Defendants' Motion for a New Trial

Defendants argue that numerous decisions by the Court resulted in errors justifying a new trial.  First, they argue that the Court erred when allowing Plaintiff Schlier to testify about his lost profits.  Second, Defendants argue that they were prejudiced when the Court excluded the tax statements of Wreckers International from evidence.  Next, Defendants argue that the Court's rulings as a matter of law that Defendant Rice's actions were per se retaliatory were in error and prejudiced the Defendants.  Finally, the Defendants argue that the verdict was clearly the result of passion or prejudice.

A.     Plaintiff Schlier's Testimony Concerning Lost Profits and The Court's Exclusion of Wreckers International's Tax Statements

Plaintiffs' and Defendants' arguments regarding testimony and evidence pertaining to the damages awarded in this case have already been detailed and discussed *supra* in Section II.

B.     The Court's Ruling that Defendant Rice's Actions Were Retaliatory

Defendants argue that the Court should grant a new trial because the Court's ruling that Defendant Rice's actions were retaliatory as a matter of law was both in error and

22

prejudicial to the Defendants.  This argument has two parts.  First, Defendants say that the Court erred by not allowing the jury to determine whether Plaintiffs' Board of Claims lawsuit was a motivating factor in Defendant Rice's decision not to reinstate.  Second, the Defendants argue that the Court erred when it found that Plaintiff Schlier's Board of Claims lawsuit constituted protected activity.

In the first of these two arguments, the Defendants identify what they term a "factual dispute about Rice's motivations" to keep Wreckers International off the Pennsylvania State Police's emergency towing list.  (Defs.' Br. in Supp., Doc. 278, 26.)   After reviewing the record, the Court finds no such factual dispute.  On March 17, 2008, Defendant Rice provided direct testimony stating that Plaintiff Schlier's Board of Claims lawsuit played a motivating role in Defendant Rice's decision to postpone Schlier's reinstatement to the towing list.  (Tr., March 17, 2008, Doc. 268, 212:23-213:20.)  The following day, on cross examination, Defendant Rice clarified he earlier testimony, saying that his decision to deny Plaintiffs' reinstatement to the emergency towing lists was motivated by the claims within Schlier's Board of Claims lawsuit, not the filing of the suit itself. (Tr., March 18, 2008, Doc. 269, 23:3-24:21.)  Referencing Rice's testimony, Defendants maintain that Defendant Rice viewed Plaintiff Schlier's lawsuit as nothing more than clarification of a position on a payment issue, and that this payment issue was the real motivation for Rice's failure to reinstate Schlier and Wreckers International to the emergency towing lists.

The Court, however, finds, as it did during trial that "[n]o matter how we characterize what the lawsuit was about, you can't get away from the fact that [the failure to reinstate] was about the lawsuit."  (Id., 92:17-19.)  Defendant Rice's testimony clearly indicates that his failure to reinstate Plaintiffs to the towing lists was his disagreement with the Plaintiffs'

pursuit of claims against the Pennsylvania State Police.  It is immaterial that the specific legal method Plaintiffs used to pursue these claims did not motivate Defendant Rice because the fact remains that he admits that he failed to reinstate Plaintiffs because he disagreed with the claims in the lawsuit.

Defendants present a second, alternative, argument stating that the Court erred when it concluded that Plaintiffs' speech was protected activity.  This argument was not made in any pretrial filings, at trial, or in any other discussions of the case, and first appears in the Defendants' post-trial brief in support (Doc. 278) of the current motion.  Defendants support this new argument by citing to the United States Supreme Court's opinion in *Pickering v. Board of Education* which advocates that courts should arrive at a balance between the interests of government employees, as citizens, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.  391 U.S. 563, 568 (1968).  This same form of balancing applies when the speech of independent government contractors is at issue rather than the speech of traditional government employees.  *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 684-685 (1996).  Thus, according to the Defendants, the Court should have either conducted its own or allowed the jury to conduct a *Pickering* balancing in order to determine whether or not Plaintiff Schlier's Board of Claims lawsuit constituted protected activity.

The Court finds that the *Pickering* balancing advocated for by Defendants for the first time in their post-trial brief is unnecessary in the current case.  This is because Defendants themselves have noted and conceded at numerous points throughout this litigation that

Plaintiff Schlier's Board of Claims lawsuit constituted protected activity.  At the March 18, 2008 conference in regard to the jury charge, Defendants' counsel stated that "No one's disputed that [Schlier is] exercising his rights in filing [with] the Board of Claims." (Tr., March 18, 2008, Doc. 269, at 132:25-133:1.)  Prior to trial, the Defendants submitted to the Court the Defendants' Proposed Points for Charge.  In this document, the Defendants suggest that the Court instruct the jury that the "Board of Claims action filed by Schlier's Towing on November 15, 2002, which sought to recover payment for towing that it alleged it was owed by the State Police" was protected by the First Amendment. (Defs.' Prop. Charge, Doc. 202, 2.)  Additionally, in March 2007, Defendants submitted a brief in support of their motion for summary judgment which read, in part, that "Defendants concede. . . that Plaintiffs' filing of the Board of Claims action against the PSP in November 2002 was a protected activity under the Constitution. . .." (Defs.' Br. in Supp. of Summ. Judge., Doc. 121, at 7.)  Defendants made this same concession in their February 5, 2007 brief in opposition to Plaintiff's motion for summary judgment. (Defs.' Br. in Opp. Summ. Judge., Doc. 108, 13.)  Since Defendants proposed prior to trial that the Court instruct the jury that Schlier's Board of Claims lawsuit was protected activity, and because they consistently conceded the point throughout this litigation, the Court is unconvinced that its conclusion that Schlier's lawsuit was protected activity is an error entitling Defendants to a new trial.

## C.      Passion or Prejudice Contributing Toward Jury's Verdict

Defendants argue that the jury's award of three million, two hundred fifty thousand dollars ($3,250,000) was the result of either passion or prejudice entitling Defendants to a new trial.  In support of this argument, the Defendants briefly review the assorted evidence about Plaintiff Schlier's physical and mental health that was presented at trial and suggest

that this "evidence simply cannot support a verdict of $3.25 [million[2]] in emotional damages so something else must have been at work on the jury's emotions."

The Third Circuit Court of Appeals has held that "a District Court reviewing a jury verdict has an 'obligation. . . to uphold the jury's award if there exists a reasonable basis to do so.'" *Evans v. Port Authority of New York & New Jersey*, 273 F.3d 346, 351-352 (3d Cir. 2001) (quoting *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989). "The court may not vacate or reduce the award merely because it would have granted a lesser amount of damages." *Id.* at 352 (quoting *Motter*, 883 F.2d at 1230). "A new trial is warranted based 'upon [a] showing that the jury verdict resulted from passion or prejudice." *Id.* (quoting *Hurley v. Atlantic City Police Department*, 174 F.3d 95, 114 (3d Cir. 1999). However, "[t]he size of the award alone [is not] enough to prove prejudice and passion." *Id*. Thus, District Courts have "an obligation. . . to ensure that the compensatory damage award finds support in the record and that the jury did not 'abandon analysis for sympathy.'" *Id*. at 352 (quoting *Gumbs v. Pueblo International, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).

Throughout the trial in this case, the Court had the opportunity to hear testimony and review evidence that was presented to the jury. Perhaps more important, the Court also had the opportunity to observe the jury as this testimony and evidence was presented. The Court did not observe at any time during trial that jurors had been incited to such passion to cause them to abandon appropriate analysis in favor of sympathy. In particular, the Court noted

---

[2]  Here, Defendants quote the sum of the $1 million damage award to Plaintiff Wreckers International and the $2.25 million damage award to Plaintiff Schlier. Although the Defendants quote this aggregate amount, their motion and supporting brief primarily discuss the $2.25 million award to Plaintiff Schlier. Likewise, the Court now focuses on the jury's award to Plaintiff Schlier. The damage award to Wreckers International is discussed in detail in Section II, *supra*.

virtually no visible reaction from jurors during the presentation of considerable testimony concerning Plaintiff Schlier's emotional state during the time he was removed from the emergency towing lists.  At all times during trial, the Court observed the jury to be patient and attentive and found these qualities especially present when the Court instructed them to perform their duty without bias or prejudice towards any party and without the influence of sympathy or public opinion.  (Tr. March 19, 2008, Doc. 270, at 122:7-13.)   Based on these observations, the Court finds no evidence that the jury's verdict awarding Plaintiff Schlier two million, two hundred fifty thousand dollars ($2,250,000.00) was the product of either prejudice or passion, and the Court will not grant Defendants' motion for a new trial on these grounds.

### V.      Defendants' Motion for Remittitur

As an alternative to their arguments for a new trial on the compensatory damages awarded to Plaintiffs, Defendants seek remittitur, arguing that the Court should substantially reduce the damages award because it is not rationally based upon the evidence presented. In particular, Defendants characterize the testimony detailing Plaintiff Schlier's emotional distress as "insubstantial at best," and cite to numerous cases involving substantial remittitur of jury awards for emotional distress.  In response, Plaintiffs argue that the jury's award was sufficiently supported by the evidence presented at trial and cite to cases where district and appellate courts denied motions for remittitur and upheld juries' awards of damages.

"The use of remittitur is committed to the sound discretion of the district court judge." *Hall v. Pennsylvania Department of Corrections*, No. 3:CV-02-1255, 2006 U.S. Dist. Lexis 68670, *66 (M.D.Pa. 2006) (Vanaskie, J.) (citing *Evans*, 272 F.3d at 354).  In determining an appropriate award, the prudent course is to evaluate the record in light of damage awards

for pain and suffering and emotional distress rendered in other cases." *Id*. (citing *Delli Santi v. CNA Insurane Cos.*, 88 F.3d 192, 206 (3d Cir. 1996)).   "The means employed should enable the Court to attain its objective of setting damages at the 'maximum recovery that does not shock the judicial conscience.'" *Id*. at *66-*67 (quoting *Evans*, 273 F.3d at 355).

In *Evans*, a jury found in favor of a plaintiff bringing a race discrimination claim.   As part of this verdict, the jury awarded compensatory damages of one million, one hundred fifty thousand dollars ($1,150,000).   *Evans*, 273 F.3d at 350.   On review, the district court determined that a remittitur of seven hundred forty thousand dollars ($740,000) was warranted.   *Id*. at 353.   The court acknowledged that the plaintiff had successfully shown that she had endured discrimination for several years causing the plaintiff to doubt herself and causing friction in the plaintiff's marital relationship.   *Id*. at 355.   The court noted that the three hundred seventy-five thousand dollar ($375,000) award remaining after the remittitur was "well above most emotional distress awards" but was not "outside the bounds of reason" because it "was not a typical case and [the plaintiff's] emotional trauma [could not] 'be cavalierly dismissed.'" *Id*. at 355-356 (quoting *Blakey v. Continental Airlines*, 992 F.Supp. 731, 734 (D.N.J. 1998).

In *Abrams v. Lightolier, Inc.*, a plaintiff successfully brought a claim against his employer for age discrimination.   841 F.Supp. 584 (D.N.J. 1994).   At the conclusion of trial, the jury awarded the plaintiff one hundred thousand dollars ($100,000) in pain and suffering damages.   *Id*. at 593.   Noting that the only evidence of the plaintiff's mental distress had been plaintiff's own testimony, and finding no evidence that the plaintiff sought psychological counseling to cope with his alleged distress, the district court found that remittitur was

28

appropriate and reduced the pain and suffering damages to two thousand, five hundred dollars ($2,500).  *Id.* at 593, 594.

In *Valentin v. Crozer-Chester Medical Center*, a plaintiff successfully brought a Title VII action against her employer for discriminating against her national origin.  986 F.Supp. 292, 296-97 (E.D.Pa. 1997). After trial, the jury awarded the plaintiff two hundred nine thousand dollars ($209,000) in pain and suffering damages.  *Id.* at 297.  While noting that the plaintiff had proven the existence of discrimination by her employer, the district court recognized that the plaintiff's own testimony saying that she was upset, depressed, and humiliated was the only evidence provided to elucidate the plaintiff's emotional distress.  *Id.* 304-05.  The court, thus, found that while this testimony did justify an award of damages compensating for the plaintiff's emotional distress, the two hundred nine thousand dollar ($209,000.00) jury award was "grossly excessive."  *Id.* at 302.  The court, then ordered a remittitur of three-fourths of the pain and suffering damages awarded by the jury, resulting in a final damage award of fifty-two thousand, two hundred fifty dollars ($52,250).

In *Shesko v. City of Coatesville*, a plaintiff successfully brought suit against her employer for unlawful sex discrimination and the jury returned a verdict awarding compensatory damages of twenty thousand dollars ($20,000). 324 F. Supp. 2d 643 (E.D.Pa. 2004).  The district court noted that the only testimony was the only evidence concerning emotional distress that had been presented, but ruled that the plaintiff's testimony that she was depressed was sufficient evidence to for the jury to rationally award twenty thousand dollars ($20,000) in compensatory damages.  *Id.* at 652.

In *Hussein v. Universal Development Management*, the plaintiff successfully brought

a suit against his landlord for invasion of privacy when, following the September 11, 2001 terrorist attacks, the landlord entered the plaintiff's home and falsely notified the local police that the home contained materials indicative of terrorist activity.  No. 2:01-cv-2381, 2006 U.S. Dist. LEXIS 49 at *2-*3 (W.D.Pa. 2006).  As a result, the plaintiff was detained by the FBI, was subpoenaed before a federal grand jury, was terminated from his employment, and was denied renewal of the lease on his home.  *Id.* at *4.  The jury awarded the plaintiff compensatory damages of eight hundred fifty thousand dollars ($850,000) and punitive damages of one million, six hundred thousand dollars ($1,600,000). *Id.* at *5. Following trial, the court denied defendants motion for remittitur of the punitive damages award, noting that "the conduct of Defendants was sufficiently reprehensible to support the award of punitive damages." *Id.* at *35.

In *Hall*, the jury awarded a verdict in favor of the plaintiff on a hostile work environment claim and awarded compensatory damages of three hundred thousand dollars ($300,000).  2006 U.S. Dist. LEXIS 68670.  The court granted the Defendants' request for remittitur, acknowledging that the plaintiff had clearly shown that she was subject to a hostile work environment causing her emotional injury, but finding that a recovery in excess of seventy-five thousand dollars ($75,000) was not sustainable based upon the record. *Id.* at *70-*72.  In particular the court noted that "neither [the plaintiff] nor any other witness testified to how her relationship with family members [had] been impacted," *Id.* at *72, and that "[the plaintiff] presented no competent evidence that the [defendant's] conduct necessitated psychological counseling or otherwise required hospitalization or medical treatment." *Id.* at *72-*73.  As the court in *Hall* found the jury's award "clearly excessive," it

granted a remittitur of two hundred twenty-five thousand dollars ($225,000), thus reducing the jury's damage award to seventy-five thousand dollars ($75,000).

In light of this case law, and after review of the record in the current case, the Court finds that a remittitur of two million, one hundred thousand dollars ($2,100,000) is appropriate in light of the evidence presented at trial.  Plaintiff Schlier sufficiently established that Defendants Rice and Dougalas violated his federally-protected rights over a period of four years, and Plaintiff Schlier presented evidence of the toll that this ongoing violation had on his emotional well-being.  The Court has no doubt that the Plaintiff suffered through several sleepless nights, anxiety about the financial stability of his business, and both public and professional embarrassment due to his removal and continued absence from the emergency towing lists.

However, the record in this case cannot support a compensatory damages award to Plaintiff Schlier in excess of one hundred fifty thousand dollars ($150,000).    For instance, while Mr. Schlier testified that his removal from the towing lists gave him great anxiety as the father of two young children relying on him as their sole means of support, he presented no evidence that he was ever unable to adequately provide for his children as a result of being removed from the towing list or that his relationship with his family suffered in any way. Similarly, he testified that he was concerned for his employees that relied upon his business to make their living, but presented no evidence that he terminated, or even considered terminating, any employees as a result of lost business stemming from his removal from the lists.  And while the Plaintiff and his close friends testified that Schlier was sufficiently devastated and embarrassed by his removal from the towing lists to go into a shell and stop attending towing industry trade shows, there was no evidence or testimony presented at trial

31

suggesting that Schlier ever sought counseling or professional assistance.  Rather, the evidence presented suggests that Plaintiff Schlier continued to diligently work to operate and grow his business as he had for almost thirty years.

The Court finds the nature of the evidence and testimony provided in the present case substantially similar to the evidence presented in the foregoing cases granting remittitur and supporting damages awards far less than the one hundred fifty thousand dollars ($150,000) awarded here.  *See Abrams*, 841 F.Supp. 584 (granting remittitur to $2,500 after finding no evidence that the plaintiff sought psychological counseling to cope with his alleged distress); *Valentin*, 986 F.Supp. 292 (granting a remittitur from $209,000 to $52,250 after recognizing that the plaintiff's own testimony saying that she was upset, depressed, and humiliated was the only evidence provided to elucidate the plaintiff's emotional distress); *Shesko*, 324 F. Supp. 2d 643 (where a plaintiff's testimony of distress was sufficient to deny remittitur or a $20,000 damages award); *Hall,* 2006 U.S. Dist. LEXIS 68670 (remitting damages to $75,000 when plaintiff and other witnesses did not testify about that plaintiff sought counseling for her mental distress).  Plaintiff Schlier is clearly entitled to damages stemming from Defendants' actions, and while he is adequately compensated by the award of one hundred fifty thousand dollars ($150,000), he is not excessively compensated.  Even though the post-remittitur damage amount of one hundred fifty thousand dollars ($150,000) is considerably greater than many damage awards for emotional distress, the Court finds that this award is not excessive in light of the four year period during which Plaintiff Schlier suffered emotional harm as a result of Defendants' actions.

Accordingly, while an award of compensatory damages for the Plaintiff's emotional pain and suffering is warranted, two million, two hundred fifty thousand dollars is clearly

32

excessive.  Defendants' motion for remittitur will be granted and the damage award to Mr. Schlier effectively reduced by two million, one hundred thousand dollars ($2,100,000) to a final amount of one hundred fifty thousand dollars ($150,000).

## CONCLUSION

For the reasons stated above, Plaintiffs' "Motion for a New Trial Against Col. Jeffrey Miller" (Doc. 240) and Plaintiff Wreckers International's "Motion for a New Trial on Wreckers International's Compensatory Damages" (Doc. 243) will be denied.  Defendants' "Motion for a Judgment as a Matter of Law or, Alternatively, for a New Trial Pursuant to Fed.R.Civ.P. 59(a), or for a Remittitur" (Doc. 248) will be denied with respect to the motions for a judgment as a matter of law and a new trial, and will be granted with respect to the motion for remittitur.

An appropriate Order follows.


 November 14, 2008 ___                          /s/ A. Richard Caputo _____
Date                                            A. Richard Caputo
                                                United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JIMMY A. SCHLIER, et al.,

     Plaintiffs,

        v.

CAPT. JOHN G. RICE, et al.,

     Defendants.

NO. 3:04-CV-1863

(JUDGE CAPUTO)

## ORDER

**NOW**, this <u>14th</u> day of November, 2008, **IT IS HEREBY ORDERED** that:

    (1)    Plaintiffs Schlier and Wreckers International's "Motion for a New Trial Against Col. Jeffrey Miller" (Doc. 240) is **DENIED**.

    (2)    Plaintiff Wreckers International's "Motion for a New Trial on Wreckers International's Compensatory Damages" (Doc. 243) is **DENIED**.

    (3)    Defendants' "Motion for a Judgment as a Matter of Law or, Alternatively, for a New Trial Pursuant to Fed.R.Civ.P. 59(a), or for a Remittitur" (Doc. 248) will be **GRANTED IN PART AND DENIED IN PART.**

        a)    Defendants' motion for a judgement as a matter of law is **DENIED**.

        b)    Defendants' motion for a new trial pursuant Fed.R.Civ.P. 59(a) is **DENIED**.

        c)    Defendants' motion for a remittitur is **GRANTED**.  The Plaintiff

shall **REMIT** $2,100,000 of the compensatory damage award. Should the Plaintiff refuse to accept $150,000 in compensatory damages, a new trial on the issue of compensatory pain and suffering damages shall be conducted.


 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge