**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JIMMY A. SCHLIER,

    Plaintiff,

       v.

CAPT. JOHN G. RICE, et al.,

    Defendants.

NO. 3:04-CV-1863

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are post-trial motions made by both Plaintiff Jimmy Schlier and Defendants Captain John G. Rice and Lieutenant David Dougalas. These motions include Plaintiff's Motion to Confirm this Judgment entered in favor of Plaintiff on March 20, 2008, Motion for a New Trial on Punitive Damages and to Amend/Correct the Judgment entered in favor of Plaintiff on June 26, 2009 (Doc. 374), and Defendants' Motion for a New Trial or Remittitur (Doc. 375). For the reasons that follow, Plaintiff's Motion  will be denied in part and granted in part. Defendants' Motion for a New Trial or Remittitur will be denied.

## BACKGROUND

**1.      Factual Background**

This Court has issued several Memoranda and Orders in this case and, therefore, will not belabor the factual issues underlying it. This Memorandum will give a brief overview of the facts. For a full factual outline, see this Court's November 14, 2008 Memorandum and Order. (Doc. 291.)

Plaintiff Jimmy A. Schlier is the owner, president and operator of Plaintiff Wreckers International Inc., d/b/a Schlier's Towing & Service Center ("Schlier's Towing"). (Decl. of

Jimmy A. Schlier, Doc. 91 ¶ 1.) In 1976 or 1977, Schlier's business began performing towing services for the Pennsylvania State Police ("PSP") and until September 2002, Plaintiff's business was on the State Police's approved towing referral lists, whereby they regularly received requests from motorists and the State Police to tow vehicles that were broken down, involved in accidents, or impounded for criminal investigations; Plaintiff's business also regularly performed towing and repair services on State Police vehicles. (Pls.' Statement of Undisputed Material Facts, Doc. 90 ¶¶ 2, 5, 13 [hereinafter Pls.' Statement]; Defs.' Counterstatement of Undisputed Material Facts, Doc. 107 ¶¶ 2, 5, 13 [hereinafter Defs.' Counterstatement].)

In February 2001, the PSP adopted Field Regulation 6-2, which regulated the provision of emergency towing services. It provided troop commanders with authority to suspend towing operators from the referral lists for a number of reasons, including failure to maintain the regulation's standards; commission of an act involving dishonesty or corruption when it affects the health, welfare, or safety of others; overcharging for services, to be determined in conjunction with the fee schedule the operator submitted its application; or repeated conduct that tends to demean the public image of the Police. (Defs.' Statement of Undisputed Material Facts, Doc. 122 ¶¶ 3-4 [hereinafter Defs.' Statement]; Pls.' Counterstatement of Facts, Doc. 137 ¶¶ 3-4 [hereinafter Pls.' Counterstatement].)

In late 2001 or early 2002, disputes developed between Plaintiff Schlier and the PSP about billing. (*See* Pls.' Statement ¶ 15; Defs.' Counterstatement ¶ 15.) In response to a price that the Police thought exorbitant and a complaint filed against Schlier's Towing by another company, which led to an investigation into possible deceptive practices by

2

Schlier's Towing, the PSP decided to no longer use Schlier's services exclusively but to seek out the best price each time towing services were needed. (*See* Defs.' Statement ¶¶ 12-18; Pls.' Counterstatement ¶¶ 12-18.)

On April 27, 2002, Plaintiff Schlier sent a formal complaint to the Director of the Division of Internal Affairs, which investigates reports of misconduct, alleging that the Swiftwater barracks had failed to pay bills and had improperly directed towing business to another towing operator owned by a convicted felon. (Pls.' Statement ¶¶ 18-21; Defs.' Counterstatement ¶¶ 18-21.)

On August 27, 2002, Rice informed Plaintiff that his company would be removed from all Troop N referral lists effective September 6, 2002. Rice informed Plaintiff that his decision was based on four factors: (1) Schlier's Towing failed to meet the requirement of charging reasonable and customary fees; (2) the company demeaned the image of the State Police by falsely communicating to another business that it had a contract with the Police and that the Police approved of its billing practices; (3) a complaint filed by that other company against Schlier's Towing resulted in a criminal investigation into deceptive or fraudulent business practices; and (4) Schlier's Towing submitted invoices to the Police totaling thirty-three thousand, three hundred twenty-five dollars and seventy-five cents ($33,325.75) but the State Police do not act as guarantor of the expenses that motorists may owe to emergency towing operators and the Police will not assume responsibility for the expenses. Finally, Rice informed Plaintiff that he could apply for reinstatement after six (6) months, contingent upon taking "appropriate remedial action so that [your business] will not conflict with the standards required by the Pennsylvania State Police." (Pls.' Statement ¶¶ 24-25; Defs.' Counterstatement ¶¶ 24-25.) The criminal

investigation of Schlier's Towing ended September 26, 2002, after the district attorney declined prosecution. (Pls.' Statement ¶ 53; Defs.' Counterstatement ¶ 53.) In March 2003, Plaintiffs unsuccessfully applied for reinstatement to the Police referral lists. (Pls.' Statement ¶¶ 57-60, 62-64; Defs.' Counterstatement ¶¶ 57-60, 62-64.)

In March 2006, Plaintiffs sent a letter to Colonel Miller through counsel complaining that the PSP had removed them from the referral lists in retaliation for exercise of their First Amendment rights to petition the government for redress of grievances, namely, for submitting the invoices. In August of 2006, after Plaintiffs moved for a preliminary injunction ordering Colonel Miller and Major Rice to reinstate them to the towing referral lists, the parties agreed to a rate schedule and Plaintiffs were reinstated to the lists. (Pls.' Statement ¶¶ 70-75; Defs.' Counterstatement ¶¶ 70-75.)

## 2.    Procedural Background

Plaintiff filed his Complaint initiating this case on August 20, 2004. (Doc. 1.) Plaintiff filed an Amended Complaint (Doc 18), mooting Defendants' initial Motion to Dismiss (Doc. 13). In a Memorandum and Order dated October 9, 2007, this Court denied Plaintiffs' motion for partial summary judgment against Defendants Rice and Miller, dismissed Defendant Josie Sharp, denied Defendants' motion for summary judgment in favor of Defendants Rice, Miller and Douglas with respect to Plaintiffs' First Amendment claims, granted Defendants' motion for summary judgment in favor of Defendants McGuire, Transue and Robb with respect to Plaintiffs' First Amendment claims, and granted Defendants' motion for summary judgement with respect to Plaintiffs' Fourteenth Amendment due process claims. (Doc. 156.)

The remaining First Amendment retaliation claims against Defendants Rice, Miller,

and Dougalas proceeded to trial on March 4, 2008. On March 20, 2008, after twelve (12) days of trial, the jury returned a verdict in favor of Plaintiffs, awarding Plaintiff Jimmy Schlier two million, two hundred fifty thousand dollars ($2,250,000) in compensatory damages and awarding the other plaintiff, Wreckers International, Inc., one million dollars ($1,000,000) in compensatory damages, and no punitive damages for either plaintiff. (Doc. 233.) This Court entered judgment accordingly. (Docs. 230, 231.)

Responding to several post-trial motions on November 14, 2008, this Court denied Plaintiffs' Motions for a New Trial, denied Defendants' Motion for Judgment as a Matter of Law, denied Defendants' Motion for a New Trial, granted Defendants' Motion for a Remittitur, and ordered Plaintiff Schlier to remit two million, one hundred thousand dollars ($2,100,000) and accept one hundred fifty thousand dollars ($150,000) or submit to a new trial on compensatory pain and suffering damages. (Doc. 291.) Plaintiff Schlier elected to have a new trial on damages. (Doc. 292.)

Plaintiffs filed a Motion for Reconsideration on November 24, 2008. (Doc. 293). In that Motion, Plaintiffs requested that the Court amend its November 14, 2008 Order and grant a new trial on punitive damages in addition to compensatory damages. On May 7, 2009, this Court issued a Memorandum and Order denying Plaintiff Schlier's Motion for Reconsideration. (Doc. 338.)

## 3. The Second Trial

The second trial on the limited issue of compensatory damages began on June 22, 2009. At the outset of trial, Defendants' counsel expressed concern that the scope of the trial might improperly blur the line between compensatory damages from pain and suffering and punitive damages based on the Defendants' conduct, and sought to have a

jury instruction that would inform the jury that punitive damages were not to be considered. (Second Trial Tr., Day 1 at 3, June 22, 2009.) At that point, the Court ruled that it would not instruct the jury on punitive damages at all because punitive damages were not an issue in the second trial. (Second Trial Tr., Day 1 at 7, June 22, 2009.)

At the second trial, Mr. Schlier testified that he was very scared by the threats of criminal prosecution that were made against him. (Second Trial Tr., Day 1 at 122, June 22, 2009.) He also testified that he felt frustrated, embarrassed and demeaned and that being removed from the towing list lowered his self-esteem. (*Id.* at 124.) Schlier further testified that he was regularly questioned by people in the community, which was also embarrassing. (*Id.* at 174.) He also was forced to sell a rotator that he had acquired for the work that he did for the state police, which he described as "devastating." (*Id.* at 178.) He also testified that he considered the state troopers to be his colleagues and friends, and that many of these friendships were damaged by the Defendants' actions. (*Id.* at 128.) Schlier also described himself as being "angry," (Second Trial Tr., Day 2 at 3, June 23, 2009), humiliated, (*id.* at 4), anxious, (*id.* at 34), and outraged (*id.* at 37).

Mr. Schlier said that the anxiety about paying his bills and employees led to many "sleepless nights." (*Id.* at 37.) As a result of the lost business from the state police, Mr. Schlier was forced to work an extra twenty (20) hours per week, which took time away from his family. (*Id.* at 39.) Mr. Schlier testified that he "stress eats" when he is anxious or nervous, and that he stress ate when he was removed from the towing list, despite the potentially detrimental effects on his medical conditions such as high cholesterol and hypertension. (*Id.* at 39-43.) He also testified that he stopped having regular visits to his primary care physician, who he had been seeing every three months to monitor his on-

6

going health issues, because he was too preoccupied by the circumstances surrounding his removal from the towing list. (*Id.* at 44-45S.) Mr. Schlier also stated that he suffered from headaches and was tense and irritable during the period that he was off the towing list. (*Id.* at 45.)

On cross examination, Mr. Schlier was asked whether he received any psychiatric or psychological treatment for his anxiety and other emotional harm; he replied that he had not seen a psychiatrist because he did not have confidence in the psychiatric field after his first wife had committed suicide despite being treated by a psychiatrist for post-partum depression. (*Id.* at 54, 62.) He also testified on cross examination that he took sleeping pills that were prescribed by his primary care physician, Dr. Carbone, during the time he was off the towing list. (*Id*. at 54-55.)

Jeffrey Wittkop testified that he considered Mr. Schlier to be his best friend. (*Id.* at 67.) He testified that Mr. Schiler was angry, frightened, and embarrassed by being removed from the towing list and that Mr. Schlier appeared stressed and like a "beaten man." (*Id.* at 73-75.) Stephen Mesics, who did not testify at the first trial, stated that the Plaintiff brought Mesics in to his business to increase efficiency after the loss of the state police revenue, and that the situation with the police was causing Mr. Schlier stress. (*Id.* at 82-83.) Harold Wheeler, another friend of Mr. Schlier's, testified that the removal from the towing list was "a devastating thing to [Mr. Schlier]" and that the emotional effect of the removal was only rivaled by Mr. Schlier's loss of his first wife. (*Id.* at 93, 96.) Thomas Murphy also testified that he considered Mr. Schlier to be his best friend. (Second Trial Tr., Day 3 at 86, June 24, 2009.) He testified that when Mr. Schlier relayed the news of his removal from the towing list, Mr Schlier "broke down and cried" and that the removal

7

"ripped [Schlier's] heart out." (*Id.* at 89.) Murphy said that Mr. Schlier "almost became a recluse" after his removal from the towing list. (*Id.*) He also stated that the extent of the emotional harm from the removal from the towing list "ranked right there with the death of his first wife." (*Id.* at 94.)

At the second trial, unlike the first trial, Plaintiff called Mr. Schlier's primary care doctor, Dr. Garry Carbone, as a witness. Dr. Carbone testified that Schlier suffers from hypertension, diabetes requiring insulin, hyperlipidemia, and chronic renal failure based on those conditions. (*Id.* at 13.) He testified that he would normally require a patient with those conditions to have an office visit once every three months; Dr. Carbone stated that Mr. Schlier had an office visit on July 17, 2002, "had a no show" in October of 2002 and did not have another visit until December of 2003. (*Id.* at 19.) From 1997 to 2001, Mr. Schlier averaged approximately five (5) or six (6) visits per year with Dr. Carbone. (*Id.* at 50-51.) In 2007, a biopsy was performed on Mr. Schlier's kidney which showed kidney failure. (*Id.* at 21.) Dr. Carbone opined that the kidney failure was a consequence of poorly controlled diabetes. (*Id.*) Dr. Carbone could not figure out why Mr. Schlier was not following the treatment regimen that was outlined for him and suspected that Mr. Schlier's "health became secondary to something." (*Id.* at 25.) Dr. Carbone testified that, in his opinion, stress during the period when Mr. Schlier was off the towing list increased the risk that Mr. Schlier would be harmed by diabetes and kidney failure. (*Id.* at 28.)

On cross examination, Defendants' counsel pointed out that stress and depression were not included in any of the relevant office notes. (*Id.* at 65.) It was also noted that there was no prescription for Ambien during the relevant time period in the records. (*Id.* at 71.) However, on re-direct, Dr. Carbone stated that he was sensitive about writing

anxiety, stress or depression in his office notes because he did not want to prejudice his patients in any future endeavors should their medical records be reviewed. (*Id.* at 79.)

In the charge conference, following the third day of trial, this Court suggested that it might include some sort of curative instruction informing the jury that damages should not be awarded to punish Defendants' conduct. (*Id.* at 129.) However, the following day, the Court decided that it would not give any instructions regarding punitive damages, or that the jury should not consider penalizing the defendant, instead choosing to adhere more closely to the standard compensatory damage instruction that is given in the Third Circuit. (Second Trial Tr., Day 4 at 6, June 25, 2009.) On June 26, 2009, the jury returned a verdict of five hundred thousand dollars ($500,000) in compensatory damages for Mr. Schlier. (Doc. 370.) Judgment was entered in favor of Plaintiff Schlier on June 26, 2009. (Doc. 371.)

Plaintiff filed a post-trial motion on July 13, 2009. (Doc. 374.) The Motion requested that the Court 1) "confirm" the first jury's verdict in favor of Mr. Schlier, 2) that, in the alternative, the Court should grant a new trial on punitive damages pursuant to Federal Rule of Civil Procedure 59(b)[1], 3) that the Court apply post-judgment interest running from the date of the first judgment, rather than the second judgment, and 4) that the judgment be amended to read that damages were sustained as a result of "Defendants'" harm rather than "Defendant's" harm pursuant to Fed. R. Civ. P. 59(e).

Defendants also filed a post-trial motion on July 13, 2009. (Doc. 375.) Defendants sought a new trial pursuant to Fed. R. Civ. P. 59(a) due to the failure of the Court to give

---

[1]    The Court assumes that Plaintiff actually means Rule 59(a), as Rule 59(b) pertains to the timing for filing motions for new trial, and will treat this as a motion under Rule 59(a).

the requested instruction regarding punitive damages and because the damage award was a result of jury passion and prejudice. In the alternative, the Defendants requested a remittitur of two hundred fifty thousand dollars ($250,000). Both of these motions have been fully briefed and are now ripe for disposition.

## LEGAL STANDARDS

**1.     Rule 59(a)**

Under Rule 59(a), motions for a new trial must be filed within ten (10) days of the date the judgment was entered. *See* Fed. R. Civ. P. 59. Plaintiffs' Motion for a New Trial Against Col. Jeffrey Miller (Doc. 240), Plaintiff Wreckers International's Motion for a New Trial on Wreckers' Compensatory Damages (Doc. 243), and Defendants' Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial, or for a Remittitur (Doc. 248) were all timely filed.

The decision to grant a new trial is left to the sound discretion of the trial judge. *See Blackiston v. Johnson,* No. 91-5111, 1995 WL 563834, at *1 (E.D. Pa. 1995), *aff'd* 91 F.3d 122 (3d Cir. 1996), *cert. denied* 519 U.S. 953 (1996). Courts have granted motions for a new trial where: (1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury. *See Maylie v. Nat'l R. R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa.), *aff'd* 983 F.2d 1051 (3d Cir. 1992). Where the evidence is in conflict, and subject to two (2) or more interpretations, the trial judge should be reluctant to grant a new trial. *See Klein v. Hollings,* 992 F.2d 1285, 1295 (3d Cir. 1993).

"Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had  without injustice."  *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).  "[A] new trial limited solely to damages is improper where 'the question of damages . . . is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.'" *Pryor v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001) (quoting *Gasoline Products*, 283 U.S. at 500). "That is 'the grant of a partial new trial is appropriate only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue.'" *Id*. (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 758 (3d Cir. 2000).

**2.     Rule 59(e)**

Under Rule 59(e), motions to alter or amend the judgment must be filed within ten (10) days of the date the judgment was entered.  *See* FED. R. CIV. P. 59.  Defendants' motion to alter or amend the judgment was timely filed.  (Doc. 209.)  In order to prevail on a motion to alter or amend the judgment, the movant must show: (1) an intervening change in the controlling law; (2) the availability of new evidence not available previously; or (3) the need to prevent a clear error of law or manifest injustice.  *See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

# DISCUSSION

**1.     Plaintiff Schlier's Post-Trial Motion**

**A.     Motion to "Confirm" the First Jury's Verdict**

First, Plaintiff requests that this Court "confirm" the first jury's verdict. Plaintiff argues that 1) this Court's remittitur violated the Plaintiff's Seventh Amendment right to a trial by jury, 2) that the size of the second verdict demonstrates that this Court's valuation of Plaintiff's damages was out of line with jurors, and 3) the first verdict was given after a full trial whereas the second verdict was given after a trial limited to compensatory damages.

As for the first argument, it is hard to see how this Court violated the Plaintiff's right to a trial by jury when he was afforded two separate opportunities to try his case in front of a jury. The second argument is essentially an attempt to revive contentions made in the motion for reconsideration of this Court's original decision to grant remittitur. As for the third, it is entirely proper to grant a new trial on damages where the issue of damages is separable from the other issues in the case. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931) (holding that new trial is not proper *unless* it is clear that the issue to be retried is separable from other issues).

Most importantly, the Plaintiff's arguments seemingly ignore this Court's long and well-reasoned decision to grant remittitur after the first jury trial. As noted in that opinion, the use of remittitur is within the sound discretion of the district court judge. *Schlier v. Rice*, No. 3:04-CV-1863, 2008 WL 4922435, at *16 (M.D. Pa. Nov. 18, 2008). In that Memorandum and Opinion, this Court weighed the evidence, testimony and case law and determined that the evidence could not support original jury verdict and ordered a remittitur. Plaintiff had an

opportunity to have this Court reconsider that decision, which it did. This Court did not grant the Motion to Reconsider.

Now, Plaintiff seeks this Court to basically reconsider the previous reconsideration. Plaintiff does not cite any binding or particularly persuasive precedent that would require us to overturn the discretionary choice to grant remittitur. Plaintiff argues that the first jury was in a better position to assess damages because they heard more evidence. Plaintiff further argues that we should "confirm" the first verdict because the second verdict was much higher than this Court's valuation of the first case.

Neither of these arguments persuades the Court that the first verdict should be reinstated. The first jury heard more evidence because more issues were being tried, including liability for the First Amendment Retaliation claims. This does not mean that the first jury was in a better position to assess damages. Instead, the second jury was in a better position to hone its decision purely to the limited issues of damages, which was being the only issued tried in the second trial. In addition, certain evidence on damages was available to the second jury that was not presented in the first trial. Most notably, Dr. Carbone testifed at the second trial, but was not a witness at the first trial.

In any event, the Plaintiff basically seeks for this Court to overturn its decision to grant remittitur and its denial of reconsideration based on the fact that the second verdict was higher than the amount this Court was willing to allow after remittitur. However, the evidence presented at the second trial was different than the first, which helps explain how a reasonable jury in the second trial could enter a verdict that was substantially higher than any verdict that could have been supported by the evidence presented in the first trial. This Court sees no reason in fact or law, for why it should change course on its well-reasoned decision

to grant remittitur after the first trial. As such, Planitiff's motion to "confirm" the first verdict is denied.

**B.      Motion for a New Trial on Punitive Damages**

Plaintiff also seeks a new trial on punitive damages against Defendants. Plaintiff is essentially re-hashing an argument made in its Motion for Reconsideration, when it sought a new trial on punitive damages. This Court denied the new trial on punitive damages, stating:

> Unlike most of the cases Plaintiff Schlier cites in support of his current motion, the jury in the current case did not award punitive damages at the conclusion of trial. Rather, the jury (1) received the Court's instructions on the issue of punitive damages, (2) considered the presented evidence in light of these instructions, and (3) did not award Plaintiff Schlier punitive damages in addition to compensatory damages.

*Schlier v. Rice*, No. 3:04-CV-1863, 2009 WL 1323564, at *4 (M.D.  Pa. May 7, 2009).

Here, Plaintiff has not cited any case law that would suggest that this previous decision was in error. The only cases cited in support of a new trial on punitive damages in Plaintiff's brief stand for the proposition that punitive damages are available in cases brought under § 1983 and that it is within the jury's discretion to grant punitive damages.

The first jury denied punitive damages. This Court denied a new trial on the issue of punitive damages. Plaintiff has, at no point, cited any case law that would suggest that this court should allow a new trial on punitive damages where a jury did not award them in the first place. Thus, the motion will be denied on this ground and a new trial for punitive damages will not be granted.

**C.      Post-Judgment Interest**

Plaintiff also argues that post-judgment interest should run from the date that the first

judgment was entered, rather than the date that the second judgment was entered. Pursuant to 28 U.S.C. §1961(a), interest is allowed on all money judgments in any civil case and is calculated from the date that judgment is entered. Post-judgment interest is not a "reward," but instead a statutorily mandated right that ensures that a money judgment is worth the same when it is received as when it was awarded. *Dunn v. Hovic*, 13 F.3d 58, 60 (3d. Cir. 1993).

However, when there are two separate judgments entered, the proper date to start the interest calculation can be obscured. At one pole, where the original judgment is affirmed in whole, post-judgment interest will accrue from the date of the first judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 98 (3d. Cir. 1993). On the other end of the spectrum, post-judgment interest will begin to accrue on the date of the second judgment when the original judgment is reversed completely. *Id.* However, when cases lay somewhere between these two poles, "the analysis essentially focuses on which of the two extremes the case resembles most." *Id.*

In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990), the plaintiff won a verdict of $5,445,000, on which judgment was entered on August 21, 1979. The Eastern District of Pennsylvania held that the evidence did not support the jury's damages and granted a new trial on damages alone. *Kaiser*, 494 U.S. at 830. The limited trial on damages resulted in a second jury award of $9,567,939; judgment was entered on this verdict on December 4, 1981. *Id.* The District Court then granted the defendant's motion for judgment notwithstanding the verdict on a portion of the damages. *Id.* On appeal, the Third Circuit Court of Appeals reversed the partial grant of judgment notwithstanding the verdict, and reinstated and affirmed the judgment that had been entered on December 4, 1981. *Id.*

15

On certiorari to the United States Supreme Court, the Defendant argued that the post-judgment interest should be calculated from the original August 21, 1979 judgment instead of the December 4, 1981 judgment. *Kaiser*, 494 U.S. at 835. The Supreme Court held that the interest should run from December 4, 1981, reasoning that damages have not been ascertained "in any meaningful way" if the judgment on damages was not supported by the evidence. *Id.* at 836. To do otherwise, would run counter to the purpose of post-judgment interest, which is to compensate a successful plaintiff for the loss that occurs between the time that damages are ascertained and the actual payment by the defendants. *Id.* (citing *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1280 (3d Cir. 1987)).

In *Dunn*, a jury originally awarded the plaintiff $1,300,000 dollars in compensatory damages and $25,000,000 in punitive damages; the judgment on this verdict was entered on November 26, 1990. 13 F.3d at 59. The District Court denied defendant's motion for a new trial on the condition that the plaintiff accept a remittitur of $500,000 in compensatory damages and $2,000,000 in punitive damages; the plaintiff accepted the remittitur and judgment was entered on October 21, 1991. *Id.* at 59-60. The Third Circuit Court of Appeals affirmed the compensatory damages award and, after hearing the issue of punitive damages *en banc*, further remitted the punitive damages to $1,000,000. *Id.* at 60. However, the Court of Appeals did not determine the issue of post-judgment interest calculation, and the Clerk of the District Court entered judgment with interest accruing as of the date of the jury verdict, November 23, 1990. *Id.*

The Third Circuit Court of Appeals held that the post-judgment interest calculation should begin on the date that jury verdict was originally entered. *Id*. at 62. It based its holding on the premise that the "jury's decision was never overturned and the matter was never

retried." *Id.* at 61. The court also noted that "the entire award was not vacated, but was merely reduced." *Id.* The court also distinguished the case from *Kaiser* by noting that, in *Kaiser*, no portion of the damage award was permitted to stand, whereas, in *Dunn*, "a part of the original damage award was affirmed without the necessity of retrial." *Id.* The court based its departure from *Kaiser* on the fact that there was a remittitur, not an overturning of the entire damage verdict. *Id.* at 60.

Because there are no cases that are entirely on point, this Court must follow the mandate of *Loughman* and try and decide whether this case more closely resembles *Kaiser* or *Dunn*. This case more closely resembles *Kaiser* where there the original verdict was vacated and an entirely new trial was held on the issue of damages. Similarly, damages were not ascertained with any reasonable certainty until the second jury verdict was reached in this case. Certainly, the argument can be made that this case more closely resembles *Dunn* because a remittitur was ordered. However, when Plaintiff chose the new trial over the remittitur, the damages were vacated and no longer ascertainable. It was unclear from that point on what, if any, damages Plaintiff would receive upon completion of the new trial.

Furthermore, *Kaiser* is the Supreme Court precedent on which most jurisprudence surrounding post-judgment interest is based. The Third Circuit Court of Appeals distinguished *Dunn* from *Kaiser* primarily on the notion that the award was not vacated by the court and that the jury's decision was never overturned. The crucial factual difference between this case and *Dunn* is that the remittitur was not accepted by Plaintiff, and the entire issue of compensatory damages was tried before a jury for a second time.

Although this Court gave Plaintiff the option of remittitur as opposed to a new trial and therefore never actively vacated the jury's verdict, Plaintiff's election of a new trial served to

vacate the jury's verdict. *Kaiser* makes it clear that the commencement of post-judgment interest turns on the extent to which damages are ascertainable at the time of the judgment. In this case, damages were not ascertainable once Plaintiff Schlier elected a new trial. In fact, the second jury was instructed on nominal damages, in the event that Plaintiff failed to prove any compensatory damages at the second trial. Thus, not only the amount, but the very existence, of damages were not ascertainable at the time of the second trial. As such, it would be improper, following *Kaiser*, to calculate post-judgment interest from that date. Therefore, post-judgment interest will run from the date that judgment in the second judgment was entered, June 26, 2009. Plaintiff's motion on this issue will be denied.

### D. Amending/Correcting the Judgment

As noted above, a motion to amend or correct a judgment can be granted when there is a need to prevent a clear error of law or manifest injustice. *See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

In the second trial, the jury's verdict slip clearly awarded Plaintiff damage for "Defendants'" conduct. (Doc. 370.) However, the judgment signed by the Clerk of Court says that jury verdict was for "any emotional harm sustained as a result of Defendant's conduct." (Doc. 371.) This is a clear mistake that should be remedied as it might affect issues such as joint and several liability and limit Plaintiff's ability to recover damages. The judgment should be altered to contain the correct language. Therefore, Plaintiff's motion will be granted on this issue.

**2.**     **Defendants' Post-Trial Motion**

    **A.**     **Motion for a New Trial**

Defendants argues that a new trial should be granted because 1) the Court did not specifically instruct the jury that it was not to punish the Defendants and that punitive damages were not an issue in the second trial and 2) the verdict was a result of passion or prejudice on the part of the jury. For the reasons outlined below. the Court holds that it properly instructed the jury in this case, and the verdict was not a result of jury passion or prejudice, and will deny the motion for a new trial.

    **1.**     **The Jury Instruction**

In order to determine whether an allegedly erroneous jury instruction requires a new trial, courts are to "determine whether the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submits the issues in the case to the jury." *Ayoub v. Spencer*, 550 F.2d 164, 167 (3d Cir. 1977).

After considering the evidence presented in the case, the Court felt that a compensatory damage instruction, complete with its warning that compensatory damages must not be based on sympathy, sufficiently apprised the jury of its role in the case and what it could, and could not, consider in making its damages calculation. As evidenced from the trial transcripts, including all side-bar conversations and the charge conference, this Court considered giving the requested instruction to the jury, but after review of the jury instructions, felt that it was unnecessary to give a jury charge on the absence of punitive damages in a case that was based solely on compensatory damages. The instruction fairly and adequately submitted the issue of compensatory damages in this case to the jury. As such, the court will not exercise its discretion in granting a new trial and Defendants' motion

on this issue will be denied.

### 2. Jury Passion and Prejudice

The Third Circuit Court of Appeals has held that "a District Court reviewing a jury verdict has an 'obligation. . . to uphold the jury's award if there exists a reasonable basis to do so.'" *Evans v. Port Authority of New York & New Jersey*, 273 F.3d 346, 351-352 (3d Cir. 2001) (quoting *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989)). "The court may not vacate or reduce the award merely because it would have granted a lesser amount of damages." *Id.* at 352 (quoting *Motter*, 883 F.2d at 1230). "A new trial is warranted based 'upon [a] showing that the jury verdict resulted from passion or prejudice." *Id.* (quoting *Hurley v. Atlantic City Police Department*, 174 F.3d 95, 114 (3d Cir. 1999). However, "[t]he size of the award alone [is not] enough to prove prejudice and passion." Id. Thus, District Courts have "an obligation. . . to ensure that the compensatory damage award finds support in the record and that the jury did not 'abandon analysis for sympathy.'" *Id*. at 352 (quoting *Gumbs v. Pueblo International, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).

After the first trial, the Court denied a new trial based on jury passion or prejudice, noting:

> Throughout the trial in this case, the Court had the opportunity to hear testimony and review evidence that was presented to the jury. Perhaps more important, the Court also had the opportunity to observe the jury as this testimony and evidence was presented. The Court did not observe at any time during trial that jurors had been incited to such passion to cause them to abandon appropriate analysis in favor of sympathy. In particular, the Court noted virtually no visible reaction from jurors during the presentation of considerable testimony concerning Plaintiff Schlier's emotional state during the time he was removed from the emergency towing lists. At all times during trial, the Court observed the jury to be patient and attentive and found these qualities especially present when the Court instructed them to perform their duty without bias or prejudice towards any party and without the influence of sympathy or public opinion. (Tr. March

20

19, 2008, Doc. 270, at 122:7-13.)   Based on these observations, the Court finds no evidence that the jury's verdict awarding Plaintiff Schlier two million, two hundred fifty thousand dollars ($2,250,000.00) was the product of either prejudice or passion, and the Court will not grant Defendants' motion for a new trial on these grounds.

*Schlier*, 2008 WL 4922435, at *15.

All of the observations made by this Court about the first jury are equally true regarding the second jury. At no time during trial was there any evidence that the passions or prejudices of the jury were being stoked to the point that it abandoned analysis in favor of an emotional response. Based on these observations by the Court, there is no evidence that the $500,000 compensatory damage award was the product of passion or prejudice on the part of the jury. Therefore, the motion for a new trial will be denied on these grounds.

## B.    Remittitur

"The use of remittitur is committed to the sound discretion of the district court judge." *Hall v. Pennsylvania Department of Corrections*, No. 3:CV-02-1255, 2006 U.S. Dist. Lexis 68670, *66 (M.D.Pa. 2006) (Vanaskie, J.) (citing *Evans*, 272 F.3d at 354). Remittitur is an appropriate remedy "when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Spence v. Board of Education of Christina School District*, 806 F.2d 1198, 1201 (3d Cir. 1986) (citing *Kazan v. Wolinksi*, 721 F.2d 911 (3d Cir. 1983)).

The Court does not find that the jury's verdict in this case is clearly excessive or unsupported by the evidence. Although this Court held that the evidence in the first case could only support a verdict of $150,000, it does not follow that the amount supported by the evidence would be similar to that figure in the second trial.

Plaintiff presented more evidence of the manner in which the emotional harm affected him in the second trial. Most notably, the testimony from Mr. Schlier regarding the manner

in which he neglected his doctor's visits for long periods of time due to preoccupation caused by his removal from the towing list and Dr. Carbone's testimony regarding the damages this neglect had on Mr. Schlier's ongoing medical issues support a significantly larger verdict than the first trial. It is a well-established principle that the defendant takes his plaintiff as he finds him, and is liable for the extent of any damage incurred, even if the plaintiff is particularly susceptible to the injury. Given the amount of new testimony supporting a larger amount of damage caused by the emotional harm, the Court cannot say that the jury's award was unsupported by the evidence or clearly excessive. As such, remittitur is not appropriate in this case. Therefore, Defendants' motion on this issue will also be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's post-trial motion will be denied in part and granted in part and Defendants' post-trial motion will be denied. Plaintiff's motion to "confirm" the first jury's verdict will be denied. Plaintiff's motion for a new trial on punitive damages will be denied. Plaintiff's motion to calculate post-judgment interest as accruing from the date of the first judgment will be denied. Plaintiff's motion to correct the judgment will be granted. Defendants' motion for a new trial will be denied. Defendants' motion for remittitur will also be denied.

An appropriate Order follows.


December 15, 2009                          /s/ A. Richard Caputo
Date                                       A. Richard Caputo
                                           United States District Judge

22

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JIMMY A. SCHLIER

    Plaintiff,

       v.

CAPT. JOHN G. RICE, et al.,

    Defendants.

NO. 3:04-CV-1863

(JUDGE CAPUTO)

## <u>ORDER</u>

**NOW**, this __15th__ day of December, 2009, **IT IS HEREBY ORDERED** that:

1) Plaintiff's motion will be **DENIED in part and GRANTED in part** as follows:

a)    Plaintiff's Motion to confirm the March 20, 2008 judgment in favor of Plaintiff is **DENIED.**

b)    Plaintiff's Motion for a new trial on punitive damages is **DENIED.**

c)    Plaintiff's Motion to have post-judgment interest accrue from the date of the March 20, 2008 judgment is **DENIED.** Post-judgment interest **SHALL ACCRUE BEGINNING ON JUNE 26, 2009**, the date that the second trial's verdict was entered.

d)    Plaintiff's Motion to amend or correct this Court's June 26, 2009 judgment is **GRANTED**. The judgment **SHALL BE AMENDED** to read "defendants'" instead of "defendant's."

2) Defendants' Motion for a New Trial is **DENIED.**

3) Defendants' Motion for Remittitur is **DENIED**

                    /s/ A. Richard Caputo
                    A. Richard Caputo
                    United States District Judge