# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JIMMY A. SCHLIER, et al.

    Plaintiff,

        v.

CAPT. JOHN G. RICE, et al.,

    Defendants.

NO. 3:04-CV-1863

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion to Amend or Correct the Judgment to Include Pre-Judgment Interest filed by Plaintiff Wreckers International Inc. ("Wreckers"). (Doc. 241.) Also before the Court is the Motion for Attorneys Fees and Costs filed by Plaintiffs Jimmy A. Schlier and Wreckers. (Doc. 244.) For the reasons that follow, Plaintiff Wreckers' motion for prejudgment interest will be granted in the amount of three hundred thirty nine thousand, seven hundred twenty dollars ($339,720.00) and Plaintiffs' motion for attorneys fees and costs will be granted in part and denied in part in the amount of four hundred seventy-three thousand, five hundred seventy-four dollars and eighty four cents ($473,574.84).

## BACKGROUND

This Court has issued several Memoranda and Orders in this case and, therefore, will not belabor the factual issues underlying it. The parties are familiar with the facts of the case and, therefore, the Court will only discuss the facts relevant to this motion.

Plaintiff Jimmy A. Schlier is the owner, president and operator of Plaintiff Wreckers International Inc., d/b/a Schlier's Towing & Service Center ("Schlier's Towing"). In 1976 or 1977, Schlier's business began performing towing services for the Pennsylvania State

Police ("PSP") and until September 2002, Plaintiff's business was on the State Police's approved towing referral lists, whereby they regularly received requests from motorists and the State Police to tow vehicles that were broken down, involved in accidents, or impounded for criminal investigations.

On April 27, 2002, Plaintiff Schlier sent a formal complaint to the Director of the Division of Internal Affairs, which investigates reports of misconduct, alleging that the Swiftwater barracks had failed to pay bills and had improperly directed towing business to another towing operator owned by a convicted felon. On August 27, 2002, Rice informed Plaintiff that his company would be removed from all Troop N referral lists effective September 6, 2002.

On March 4, 2008, trial commenced against Defendants Rice, Miller, and Dougalas on claims of First Amendment retaliation. On March 20, 2008, after twelve (12) days of trial, the jury returned a verdict in favor of Plaintiffs, awarding Plaintiff Jimmy Schlier two million, two hundred fifty thousand dollars ($2,250,000) in compensatory damages and awarding the other plaintiff, Wreckers International, Inc., one million dollars ($1,000,000) in compensatory damages, and no punitive damages for either plaintiff. (Doc. 233.) This Court entered judgment accordingly. (Docs. 230, 231.)

Responding to several post-trial motions on November 14, 2008, this Court denied Plaintiffs' Motions for a New Trial, denied Defendants' Motion for Judgment as a Matter of Law, denied Defendants' Motion for a New Trial, granted Defendants' Motion for a Remittitur, and ordered Plaintiff Schlier to remit two million, one hundred thousand dollars ($2,100,000) and accept one hundred fifty thousand dollars ($150,000) or submit to a new trial on compensatory pain and suffering damages. (Doc. 291.) Plaintiff Schlier

2

elected to have a new trial on damages. (Doc. 292.)

The second trial on the limited issue of compensatory damages began on June 22, 2009. On June 26, 2009, the jury returned a verdict of five hundred thousand dollars ($500,000) in compensatory damages for Mr. Schlier. (Doc. 370.) Judgment was entered in favor of Plaintiff Schlier on June 26, 2009. (Doc. 371.)

On April 2, 2008, Plaintiff Wreckers filed a motion seeking pre-judgment interest in the amount of four hundred three thousand, four hundred five dollars and nine cents ($403,405.09). That same day, Plaintiffs also filed a motion seeking one million, three hundred thousand dollars ($1,300,000) in attorneys fees and thirty thousand dollars ($30,000) in costs. On December 11, 2008, Plaintiffs submitted a new calculation of attorneys fees to reflect the added cost of the second trial. At that time, Plaintiffs sought one million, three hundred eighty thousand, two hundred forty-nine dollars and twenty-five cents ($1,385,249.25) in attorneys fees and thirty-five thousand two hundred and forty-four dollars ($35,244.00) in costs and expenses. (Doc. 296, Exs. 2-3.) Both motions have been fully briefed and are currently ripe for disposition.

## DISCUSSION

1. **Pre-judgment Interest**

Plaintiff Wreckers argues that it is entitled to pre-judgment interest on the judgment entered in its favor. This Court recently had the opportunity to examine how pre-judgment interest should be assessed in cases brought pursuant to § 1983 on First Amendment retaliation claims. In *Lohman v. Duryea Borough*, 3:05-CV-1423, 2008 U.S. Dist. LEXIS 51189, at * 4-5 (M.D. Pa. July 1, 2008) (Caputo, J.), this Court held that

3

prejudgment interest is available in § 1983 cases for economic damages. In calculating pre-judgment interest for such claims, this Court applied precedent from this district and determined that IRS overpayment rates are the proper rates to use. *Id* at *8 (citing *Taylor v. Cent. Pennsylvania Drug and Alcohol Servs. Corp.*, 890 F. Supp. 360, 368 (M.D. Pa. 1995)). In *Lohman*, the Court calculated simple pre-judgment interest by multiplying the interest rate for the relevant quarter by the amount owed by the defendant, and then divided that number by four. *Id.* at *8-9.

Although the *Lohman* case involved pre-judgment interest on backpay, this Court believes that the rationale in that case applies equally to the damages in the instant case, and will use the same pre-judgment interest calculation. The damages began accruing on September 6, 2002, when Plaintiff Wreckers was removed from the towing list; judgment was entered in favor or Wreckers on March 20, 2008. The following is a calculation of pre-judgment interest that accrued on Plaintiff Wreckers' one million dollar ($1,000,000) jury award, using the formula explained above:

| September 6, 2002- September 30, 2002[1] | 6% | $4,080 |
|---|---|---|
| October 1, 2002-December 31, 2002 | 6% | $15,000 |
| January 1, 2003- September 30, 2003 | 5% | $37,500 |
| October 1, 2003-March 31, 2004 | 4% | $20,000 |
| April 1, 2004- June 30, 2004 | 5% | $12,500 |
| July 1, 2004- September 30, 2004 | 4% | $10,000 |
| October 1, 2004-March 31, 2005 | 5% | $25,000 |

---

[1] The first two increments of time are calculated on a *per diem* basis. The twenty-five (25) day period between September 6, 2002 and September 30, 2002 are treated as 6.8% of one year. The eighty (80) days between January 1, 2008 and March 20, 2008 are treated as 21.9% of a year; 2008 was a leap year.

4

| April 1, 2005-September 30, 2005 | 6% | $30,000 |
| October 1, 2005-June 30, 2006 | 7% | $52,500 |
| July 1, 2006-December 31, 2007 | 8% | $120,000 |
| January 1, 2008-March 20, 2008 | 7% | $13,140 |
| **TOTAL** | | **$339,720**[2] |

Plaintiff suggests that the interest should be compounded daily. Defendants argue that the calculation used in *Lohman* and *Taylor* was discretionary and should not be applied to the instant case because it involves corporate economic losses caused by the government rather than the back-pay awarded to an individual in *Lohman*. However, Defendants note that the applicable pre-judgment interest rate is left to the discretion of the Court. Neither party has presented any persuasive precedent that suggests that this Court should abandon the pre-judgment interest calculation used in *Lohman*, which applied to economic damages in similar § 1983 First Amendment retaliation claim. As such, this Court exercises its discretion to continue the precedent set in *Lohman*, and has calculated the pre-judgment interest available to Plaintiff Wreckers accordingly. Plaintiff Wreckers' Motion for Pre-judgment interest will be granted and three hundred thirty-nine thousand, seven hundred twenty dollars ($339,720.00) will be added to the judgment.

2. **Post-Judgment Interest**

Post-judgment is statutorily mandated for all judgments pursuant to 28 U.S.C. § 1961. *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir. 1993). The statute dictates that "[s]uch interest shall be calculated from the date of entry of judgment, at a rate equal to the

---

[2] All interest rates can be found in I.R.S. Notice 746, Rev. 7-2009 (August 5, 2009). http://www.irs.gov/pub/irs-pdf/n746.pdf.

weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding. (sic.) the date of judgment." 28 U.S.C. 1961(a). Interest is to be computed daily to the date of payment and compounded annually. 28 U.S.C. § 1961(b).

Judgment was entered on Wreckers' claims on March 20, 2008. The applicable interest rate for that date is 1.52%. Federal Reserve Statistical Release, http://www.federalreserve.gov/RELEASES/H15/20080317 (March 17, 2008). As noted in this Court's Memorandum and Order of December 15, 2009, post-judgment interest began to run on Plaintiff Schlier's judgment on June 26, 2009. The applicable interest rate for that date was is 0.51%. Federal Reserve Statistical Release, http://www.federalreserve.gov/RELEASES/H15/20090622 (June 22, 2009).

It has been one year and two hundred seventy-six (276) days since judgment was entered against Wreckers; this is equal to 1.76 years. Compounded annually, this yields post-judgment interest in the amount of twenty-six thousand, nine hundred six dollars and thirty-three cents ($26,906.33).[3] It has been one hundred seventy-eight (178) days since judgment was entered against Schlier; this is 0.49 years. This yields one thousand, two hundred forty-seven dollars and eighty-eight cents ($1,247.88) in post-judgment interest. This amount should be re-calculated daily between the date of this order until the time on which Defendants actual pay Plaintiffs their awards using the formula outlined in the footnotes.

## 3. Attorneys Fees

The starting point for a court's determination of reasonable attorney's fees is the

---

[3]   To calculate post-judgment interest ("I"), the Court multiplies the principal ("P") by the interest rate ("R") plus one, raised to the power of the number of years ("Y"). Thus, $I = P \times (1 + R)^Y$.

6

lodestar calculation, which entails multiplying the number of hours reasonably expended by each attorney by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking fees has the initial burden of presenting evidence that the claimed rates and amounts of time are reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564 (1986). Once the fee applicant has made this initial showing, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Id.* (quoting *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541 (1984))*.* The opposing party then has the burden of making specific objections to the proposed fee by affidavit or brief. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). In considering the opposing party's objections, the district court has significant discretion to adjust the lodestar downwards. *Id.*

The first step in the lodestar calculation is the determination of the number of hours reasonably expended. The court begins with the claimed hours for which the applicant has evidentiary support, and then makes deductions, if necessary, as follows:

> The district court should exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." *Institutionalized Juveniles* [*v. Secretary of Public Wellfare*], 758 F.2d [897, 919 (3d Cir. 1985)] (quoting *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943). The court also can deduct hours when the fee petition inadequately documents the hours claimed. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

*Id.* (citations omitted). In determining whether the number of hours claimed is reasonable, the court may divide the claimed hours according to the type of work performed. *See, e.g., Maldonado v. Houstoun*, 2001 WL 720654 (3d Cir. 2001). Hours that would not typically be

7

billed to a client cannot be billed to an adversary. *See Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995).

The second step in the lodestar determination is determining whether the claimed rates are reasonable. The court starts with the market rates prevailing at the time of the petition, which the party seeking fees has the burden of establishing by satisfactory evidence. *See Maldonado*, 2001 WL 720654 at *3; *Lanni v. State of New Jersey*, 259 F.3d 146, 149 (3d. Cir. 2001). "[T]he court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183. If there is evidence that the market has established different rates for different categories of legal work, the district court should assign the appropriate rate to each category. *See Loughner v. University of Pittsburgh*, 2001 U.S. App. LEXIS 15992 (3d Cir. 2001).

Once the lodestar has been determined, the Court can adjust the lodestar downwards if the amount is not reasonable in light of the applicant's success - or more properly, his lack thereof - in the litigation. *Rode*, 892 F.2d at 1183. In certain rare instances, the lodestar may also be adjusted upwards to compensate counsel for exceptionally high quality work or for the risks associated with undertaking the litigation. *Id.* at 1184. The party seeking an adjustment has the burden of proving that it is appropriate. *Lanni,* 259 F.3d at 149. "If that party meets the burden of proving that an adjustment is appropriate, the lodestar amount may be increased or decreased at the discretion of the District Court." *Id.*

However, where the plaintiff does not agree to be represented by counsel at an hourly rate, this Court has applied the fee agreement between plaintiff and counsel to determine

8

the attorneys fees. *Bernback v. Greco*, 3:98-CV-0230, slip. op. at 15 (M.D. Pa. May 20, 2002), *aff'd*, 69 Fed. Appx. 98, 105 (3d Cir. 2003). In *Bernback*, the plaintiff entered into a fee agreement with his attorney that would pay counsel forty (40) percent of any settlement, verdict, arbitration or appeals and an hourly rate in the case of a no-fault recovery not to exceed forty (40) percent of the total recovery. *Id*. The Court applied the contingent fee to the award obtained at trial, but noted that "even if Plaintiff's hourly position is accepted . . . it is still capped at forty percent (40%) of the recovery." *Id.* In a later opinion, this Court held that the contingent fee based on all monies received was also applicable to any interest on the money received in a jury verdict. *Bernback v. Greco*, 3:98-CV-230, 2005 WL 1563503, at * 2 (M.D. Pa. June 30, 2005).

In this case, Plaintiff Schlier originally agreed to an hourly rate plus expenses as follows: three hundred twenty-five dollars ($325) per hour for Cletus Lyman**,** two hundred twenty-five dollars ($225) per hour for Michael S. Fettner, two hundred dollars ($200) per hour for Michael T. Sweeney, and sixty dollars ($60) per hour for paralegal work. (Doc. 315, Ex. D.) However, approximately two months after the letter memorializing the fee arrangement was sent, Plaintiff Schlier and counsel entered into a new arrangement. This new agreement, signed by both Mr. Lyman and Mr. Schlier, stated that Plaintiff's "non-contingent obligation to pay fees and expenses as described in the June 16 letter will be capped at $100,000." (Doc. 315, Ex. D.) The agreement further stipulated that "in the event of recovery, [counsel] will be entitled to an additional fee of 20% of the recovery." (Doc. 315, Ex. D.) The agreement defined recovery "all money collected, whether by judgment or settlement, and by whatever name, including damages for lost revenue or emotional harm, expenses and attorneys fees." (Doc. 315, Ex. D.)

9

Therefore, if the lodestar number yields an amount over one hundred thousand dollars ($100,000), Plaintiff Schlier will be entitled to $100,000 in attorneys fees plus twenty percent (20%) of any jury verdict plus interest.

By any reasonable calculation of attorneys fees, Plaintiffs' counsel has clearly surpassed the one hundred thousand dollar ($100,000) cap that was put on non-contingent fees. This is a case in which three attorneys were prominently involved in preparation and required four years and two trials before the issues could be determined. Plaintiffs seek approximately one million, four hundred thousand dollars ($1,400,000) in attorneys fees and thirty-five thousand two hundred and forty-four dollars ($35,244.00) in costs and expenses. In response, Defendants argued that the hourly rates for Plaintiffs' counsel should be $225 per hour for Mr. Lyman, $170 per hour for Mr. Sweeney, $210 per hour for Mr. Fettner, and $63 per hour for paralegal work. (Doc. 315.)

Defendants also objected to the number of hours expended. First, Defendants argue that 1.25 hours billed by Mr. Sweeney for a conference attended by opposing counsel should not be billed to Plaintiff. Defendants also point to many instances of "block billing" in which Plaintiffs' counsel pooled several activities together into one billing notation. However, in this district, "[b]lock billing is a common practice which itself saves time in that the attorney summarizes activities rather than detailing every task" and such billing will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed. *United States of America ex rel. John Doe I and John Doe II v. Pennsylvania Blue Shield*, 54 F. Supp.2d 410, 415 (M.D. Pa. 1999). Having reviewed the block billing, this Court believes that the hours billed correspond to the amount of time it would reasonably take to complete the tasks listed and will not adjust the lodestar downward based on the block billing practices of

Plaintiffs' counsel.

Defendants' counsel also argues that the lodestar number should be adjusted downward because of the lack of success on Plaintiffs' cross-motions for summary judgment, preliminary injunction, post-trial motions, and dismissed Fourteenth Amendment claims. Where "time expended on the motions was unrelated to the relief ultimately obtained" it is within a district court's discretion to disallow attorneys fees for time spent on such motions. *Rode*, 892 F.2d at 1186. However, none of the challenged motions can be considered "unrelated" to the relief obtained by Plaintiffs. Just because they were unsuccessful motions does not mean that they are not compensable. *See Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, 271 (3d Cir. 2002) (affirming award of attorneys fees for summary judgment motion that was never accepted for filing or considered on the merits). Therefore, the Court will not adjust the lodestar downward based on these unsuccessful motions.

Defendants also contend that the hours expended by Plaintiffs' counsel were excessive. Defendants seek to have 1) the time spent drafting the complaint reduced from 102.15 hours to 30 hours, 2) the hours spent conducting discovery-related tasks cut in half, 3) a subtraction of 66.50 hours from the time spent conducting depositions, 4) the time spent on preliminary injunctions reduced from 150 hours to 70 hours, 5) the trial preparation time reduced from 1,174.18 hours to 500 hours, 6) the hours spent on post-trial motions reduced from 322.25 hours to 100 hours, and 7) a reduction of $3,800 for miscellaneous non-professional task billed to Plaintiffs. In total, Defendants are seeking to have approximately 1,750.08 billable hours discounted, leaving 2,873.15 billable hours. Assuming, without deciding, that Defendants are correct, and applying lowest hourly rate to remaining billable

hours (Mr. Sweeney's $170 per hour), there would still be approximately $488,410.00 in attorneys fees remaining. Therefore, even if the Court were to assume that Defendants were entitled to all the fee reductions they requested for excessive hours, the lodestar figure would be well above the $100,000 non-contingent cap in the fee agreement.

In their reply brief, Plaintiffs' counsel argues that the written fee agreement provides what the client shall pay and that the agreement was reached with the understanding that a prevailing party is entitled to attorneys fees under 42 U.S.C. § 1988. This Court notes that the fee agreement reflects no such understanding. Furthermore, the fee-shifting scheme exists to reimburse successful civil rights plaintiffs for counsel fees incurred for legal services in pursuing their claims, and an agreement as to what those services are worth must be given due consideration. In this case, Mr. Schlier owed his counsel the amount provided in his fee agreement. Plaintiffs' counsel is correct that this agreement provides what the client shall pay, and this Court will award counsel fees consistent with that amount.

Thus, Plaintiff is entitled to $100,000, plus 20% of any amount received. As noted above, Mr. Schlier received $500,000 in compensatory damages, and Plaintiff Wreckers received $1,000,000 in compensatory damages plus $339,720.00 in pre-judgment interest and $28,154.21 in post-judgment interest to date. Therefore, Plaintiffs should be awarded four hundred seventy-three thousand, five hundred seventy-four dollars and eighty-four cents ($473,574.84) in attorneys fees.

**4.    Costs**

By the plain language of the fee agreement entered into by Plaintiffs and counsel, the non-contingent cap includes attorneys fees *and* expenses. As noted above, the fees clearly exceeded this cap. Logically, any additional expenses added to the attorneys fees would

further exceed the cap. Any entitlement to fees was, therefore, necessarily included in the calculation performed above. Plaintiff is not entitled to additional recovery for costs.

## CONCLUSION

For the foregoing reasons, Plaintiff Wreckers will be granted $339,720.00 in pre-judgment interest and Plaintiffs Wreckers and Schlier will be awarded $473,574.84 in attorneys fees.

An appropriate Order follows.

December 22, 2009                                                             /s/ A. Richard Caputo
Date                                                                                  A. Richard Caputo
                                                                                                    United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JIMMY A. SCHLIER

    Plaintiff,

        v.

CAPT. JOHN G. RICE, et al.,

    Defendants.

NO. 3:04-CV-1863

(JUDGE CAPUTO)

## **ORDER**

**NOW**, this  22nd  day of December, 2009, **IT IS HEREBY ORDERED** that:

Plaintiff's motions for attorneys fees and prejudgment interest are **GRANTED in part and DENIED in part** as follows**:**

    A) Plaintiff Wreckers is awarded three hundred thirty nine thousand, seven hundred twenty dollars ($339,720.00) in pre-judgment interest.

    B) Plaintiffs Wreckers and Schlier are awarded four hundred seventy-three thousand, five hundred seventy-four dollars and eighty four cents ($473,574.84) in attorneys fees. This amount shall be compounded by any additional post-judgment interest that accrues between the date of this order and the date of payment.

    C) Plaintiffs will not be awarded additional monies for attorneys costs.

                                     A. Richard Caputo
                                     A. Richard Caputo
                                     United States District Judge